## THE CLEVELAND, COLUMBUS, CINCINNATI, AND INDIANAPOLIS RAILROAD CO. *v.* BROWN.

RAILROAD.—*Injury to Cattle.*—*Fence.*—Where a portion of the fence of a railroad was burned, and one week thereafter cattle entered upon the track through the opening so caused, and were injured by a passing train;

*Held*, that the delay in repairing the fence was unreasonably long, and that the railroad company was liable for the injury to the cattle.

From the Madison Circuit Court.

*J. A. Harrison,* for appellant.

*M. S. Robinson* and *J. W. Lovett,* for appellee.

The Cleveland, Columbus, Cincinnati, and Indianapolis R. R. Co. *v.* Brown.

BUSKIRK, J.—This was an action by the appellee against the appellant, under the statute, to recover damages for killing and injuring cattle of appellee. The complaint was in two paragraphs. The first charged the killing of one and the injury of two other head of cattle. The second charged the killing of a steer at a different time and place from that named in the first paragraph of the complaint. There was issue, trial by the court, finding for appellee, and, over a motion for a new trial, judgment on the finding.

The only error assigned is overruling the motion for a new trial.

We will first consider the injury complained of in the first paragraph of the complaint.

It was clearly proved that a train of cars on appellant's road killed one and injured two head of cattle belonging to appellee; that the one killed was worth twenty-five dollars, and that the injury to the two others amounted to fifteen dollars. The appellant's road had been fenced, but a portion of the fence had been burned down, and the cattle had gotten on the track through the gap made by the fire. At the place where the cattle got on the track, about twenty panels of fence had been burned and torn down to prevent burning more of the fence. There were some smaller gaps in the fence made by burning, near to the place where the cattle got on the track. The decided weight of the evidence was, that the fence had been burned about two weeks before the injury to appellee's cattle. Two persons residing in the neighborhood were quite certain that the fence had been down two weeks. The foreman of that section testified that the fence was down about two weeks, but was of opinion that appellee's cattle were injured about a week after the fence was burned. Assuming that this witness is correct, as to the length of time the fence had been down before the injury, it presents for decision the question whether a delay of one week in repairing was unreasonable and charged the appellant with negligence. Counsel for appellant relies upon the cases of

*The Toledo and Wabash Railway Co.* v. *Daniels,* 21 Ind. 256, and *Indianapolis, etc., Railroad Co.* v. *Truitt,* 24 Ind. 162.

In the case first cited, it was shown that the fence had been accidentally burned down, and that it had been repaired within twenty-four hours after notice of the accident, and that the injury occurred after notice and before the fence was repaired. It was held that the fence was repaired within a reasonable time, and that the company was not liable.

In the other case, the fence was burned down at five or six o'clock in the evening, and was put up early the next morning. The cattle were killed during the night. It was held that the fence was repaired within a reasonable time, and that the company was not liable.

It was shown that the foreman of the section where the fence was burned had notice of its destruction, and no excuse was shown for the failure to rebuild the fence sooner. It is manifest, when we consider the time necessary to repair, that the delay was unreasonable, and the company is liable. *The Toledo, etc., Railway Co.* v. *Cohen,* 44 Ind. 444.

In support of the second paragraph of the complaint, it was shown that a freight train on appellant's road ran over and killed a steer belonging to appellee which was of the value of ten dollars. The evidence as to the place where the steer was killed is as follows:

Jesse Seybert testified: "I was hauling wood near the switch, and we had stopped to eat dinner; heard the whistle blowing; we jumped upon wagon, saw the cars strike one and knock it off, a white yearling steer; the cars broke its hind leg. * * * The gate to the railroad was left open; the cattle went in at the gate, also out of it. I drove them out several times. Mr. Dorran had charge of the gate. Gate was there to haul wood into it. Dorran was working for the railroad company. I was hauling wood for the company. Several other persons also hauling wood. It was a freight train."

This witness, on cross-examination, testified: " This gate was on the west side of the railroad; don't know who put

it there. It was not a gate, it was a pair of bars; they hung a gate afterward. * * * County road runs east and west near there. * * * This is at a switch at the saw-mill; switch lays north of public road spoken of. Switch, the south end of it, not over forty yards; gate right west of switch; in saw-mill there Dorran then had a kind of grocery; switch used for loading and unloading lumber; took off saw-logs; still continues to be used, the switch; saw-mill not there."

On re-examination, he testified: "Had driven cattle out the evening before; the switch not more than forty yards from place of injury."

James Seybert testified: "I was hauling wood to the road, and as we drove out heard the whistle blow. I got up in my wagon and saw the engine knock the steer off; it had its hind leg broken. * * *· Saw cattle go through the bars the day before; bars were down and had been for a week before; don't know of any other place where steer could have got in."

This witness, on cross-examination, testified: "I did not put up the bars, when passing in and out; had been once before, and was then going out when calf was killed. About one hundred and fifty yards off when engine struck calf; calf from road where you cross to railroad was perhaps some one hundred and fifty yards."

Patrick Moran, who was in the employment of appellant, as foreman of that section, after testifying about the burning of the fence at the place where the cattle mentioned in first paragraph of complaint were injured, proceeded to say: "I heard about white steer of Brown's being killed at the switch, did not see it. Switch is nine or ten rods long. Dorran used switch for transporting saw-logs and stuff and wood from; switch put in by the company. Switch still continues to be used for public place."

It is insisted by counsel for appellant that the white steer was killed at a place where the company was not required to fence the road. It is quite likely that the learned coun-

sel engaged in this cause may, from their personal knowl-
edge of the *locus in quo*, understand the above testimony,
but we confess that it is wholly incomprehensible to us.
From it we cannot tell whether the switch was built by the
railroad or was connected with the saw-mill.    Nor can we tell
the relative positions of the switch and the public road that
is spoken of, nor how far the gate or pair of bars were from
the public highway, or whether the gate was connected with
the switch or the main track.   We cannot determine from
the evidence whether the company was or was not required
to fence the road at the place where the gate or bars were
situated.    It does appear that a fence had been placed there,
but had been left open by the employees of the appellant.
The fact that a fence had been put where the steer got on to
the track raises a presumption that the appellant or some
person supposed that a fence was proper.

The jury, who are presumed to have been made acquainted
with all the surroundings of the place where the steer got
on the track, found that the appellant was required to fence
at such place and had failed to keep it securely fenced, and
in the confused and unsatisfactory condition of the evidence,
we cannot disturb their finding upon the point in question.

There was no error committed by the court in overruling
the motion for a new trial.

The judgment is affirmed, with costs.