## THE PITTSBURGH, CINCINNATI AND ST. LOUIS R. W. CO. v. EBY.

RAILROAD. —*Fence.*—*Cattle-Guard.*—To keep its road "securely fenced," according to the requirements of the statute, a railroad company must construct and keep in repair sufficient cattle-guards, on each side of highways crossing its track.

SAME.—If a cattle-guard be in such condition that stock can pass over it, from a highway, onto the track of the railroad upon which it is situated, such road is not "securely fenced," within the meaning of the statute.

SAME.—*Killing Stock.*—*Failure to Repair.*—If, by reason of a railroad company's neglect to repair a cattle-guard accidentally put out of repair, of which it has had reasonable notice, stock enter upon its track, over such cattle-guard, from a highway, and are killed, such company is liable therefor.

From the Grant Circuit Court.

*N. O. Ross*, for appellant.

*R. W. Bailey* and *A. Diltz*, for appellee.

PERKINS, C. J.—Suit by appellee, against appellant, to recover the value of a horse, killed by a train of cars on appellant's road, at a point where it is alleged the same was not securely fenced. The complaint was in two paragraphs; the second alleged negligence in the killing, and set out the facts showing wherein the said railroad was not securely fenced. Answer in general denial; jury trial; verdict for plaintiff; motion for a new trial for the following reasons :

1. The verdict of the jury is contrary to law.

2. The verdict of the jury is contrary to the evidence.

3. The verdict is not sustained by sufficient evidence.

The motion was overruled and exceptions reserved. A motion in arrest followed, on the ground that the complaint did not contain a cause of action.

The motion was overruled, the ruling excepted to, and final judgment rendered for the appellee.

The complaint contained a cause of action.

The evidence is in the record.

The plaintiff, to sustain the issues on his part, introduced the following testimony:

Jacob G. Eby.—"Am plaintiff in this suit. I live west of town, near the railroad. I missed my horse and looked for him, but could not find him. I heard a train pass, and went down to the railroad, and found the horse on the railroad, killed. It was the 15th day of February, 1875, in Grant county, Indiana. I saw by the tracks that the horse had crossed right on the cattle pit. The cattle-guard way was as good as none, not more than fifteen inches deep, from ties to bottom, when there was no snow. It was filled with snow. The cross-pieces were from six to nine inches wide. The horse passed over it. It was full of snow, and had been for two weeks. It would be hard for a man to tell where it was. The horse belonged to me, and was worth eighty dollars."

On cross-examination the witness testified: " The horse was thirty yards from the cattle-guard. The marks showed he was just at the cattle pit, on the inside, when he was struck, and was carried on to where I found him. The marks were on the road and on the ties, all along from the cattle pit to where he was lying. The cattle pit was filled with snow. Have seen cattle pass over it when there was no snow. I had the horse in the stable, and some friends came to my house, and I turned the horse in the barn-yard. There was a gate from the yard to the highway, and the horse must have got out on the highway, through it, and gone down on the railroad. I don't know how the gate came open, nor who opened it.

It was in evidence that some roads made cattle-guards with cross-pieces bevelled upwards, and some did not.

David Sliger testified: "I heard the horse was killed. I saw him a day or two after he was killed. He was fifteen or twenty steps east of the cattle-guard. The cattle-guard is in bad condition. I drove hogs over it when there was no snow. It was filled with snow when I saw

it, after the horse was killed. The ties are about five inches apart, and six to nine inches wide on the top."

Cross-examined :  " The hogs went over the cattle pit."

George Sliger testified :  " I saw the horse directly after he was killed. He was not entirely dead when I got there.  He was from twenty-five to thirty yards from the cattle-guard.  Saw tracks where the horse was struck, inside the cattle-guard, in field.  He was dragged over the ties.  Saw horse tracks inside the field.  The cattle-guard was full of snow.  The guard was filled with snow, and had been so for ten days.  He was a good farm horse, but not a salable horse.  A common farm horse ; think he was worth seventy-five or eighty dollars.  There was not a recent snow, as the tracks in the road were not filled."

On cross-examination the witness testified :  " The horse was struck just at the cattle-guard, and was dragged along to where he was when found.  The highway crosses the railroad there, and the horse must have been in the highway, and got on or over the cattle-guard, from the highway."

Allen Druckenmiller testified : "I owned the horse killed, at one time.  I saw him lying along-side of the track, about twenty-five yards from the cattle-guard.  The cattle-guard was full of snow, at the time.  Think the horse was hit, ten or fifteen feet from the cattle-guard.  Snow had been on the ground four or five days, from first snow."

John Brownlee testified :  " The name of defendant's road was Pittsburgh, Cincinnati and St. Louis Railway Company."

The defendant, to sustain the issue on her part, then introduced the following testimony :

Michael Marnan testified:  " I am working on the railroad of the defendant ; I pass on the road every day ; was on it the day the horse was killed ; I saw the hair on the ties, on the west side of the cattle-guard, on the public highway ; the cattle pit must be between three and four feet deep, below the ties, and was in good order ; it is now, and was all the time ; it is an ordinary cattle pit ; the

fences were in good order, and sufficient to turn stock; I pass over that part of the road, where the horse was killed, every day."

On cross-examination, the witness said: "The hair on the ties I saw was next the highway, and the marks were on the ties, all along to where the horse was found; there was snow in the cattle-guard; it had been drifted some in the road, and was on the ties over the cattle-guard, but it was not packed down so a horse could walk over them without sinking in the snow."

Daniel Marnan testified: "I am section 'boss' on the railroad west from Marion; I know the cattle-guard referred to; it is four feet deep; I was at the cattle-guard, on the 15th day of February last; the snow fell the day before, and had drifted on the ties and obscured the view somewhat; there were wing fences from the cattle-guard, sufficient to turn stock; I examined the place where the horse was struck; he was struck in the highway, just at the cattle-guard; I could see the marks in the road, and on the ties, where he was hit."

On cross-examination, the witness said: "It was soon after the horse was killed I went there; I went to see, for the purpose of knowing where he was killed; it is part of my business to look after such things; the cattle-guard was in good order; there was some snow in it, and snow had drifted so that a man approaching it would not see as plainly as if no snow was there; I measured the cattle-guard, and it was four feet deep and in as good condition as any guard on the road, and was such as is usually made."

Patrick Glanin testified: "I am working on the road, and have seen the cattle-guard where the horse was killed, every day in the week. It was in good order. I did not examine the place where the horse was hit. I saw hair on the ties, on the wagon-road side of the pit. The cattle-guard was not filled with snow."

On cross-examination, the witness testified: "There was snow in the cattle pit, but it was not filled, and there

was three feet space in the pit, below the ties. I know, because I looked at it, and we passed over it every day in our work. We went out there, when we heard the horse was killed, to see about it."

Richard Criswell testified: " I don't know the horse of Eby's, that was killed. I think I have seen him hitched up here in town."

L. M. Hiatt testified: "I don't know the horse that was killed. I owned a sorrel horse called Mike; he was poor when I owned him; was a good work horse."

Samuel Blinn: " I owned the horse twice, about one year before he was killed. He was twelve or fourteen' years old. He was run in a 'bus at Xenia. I think he was worth sixty-five or seventy dollars."

The plaintiff, in rebutting, introduced Jacob G. Eby, the plaintiff, who testified:

" I made a close examination as to the place where the horse was struck, and there was no hair on the highway side of the cattle-guard. I was there the day the horse was killed, before the section men were."

In *The Indianapolis, etc., R. R. Co.* v. *Irish*, 26 Ind. 268, it is decided that the duty of placing suitable cattle pits at the crossings of highways, etc., results from the statutory requirement that a railroad shall be securely fenced, to relieve its owner from liability to pay for animals killed by its cars and locomotives. According to this decision, such pits are parts of the road fences. These fences, including the cattle-guards or pits, must, as a general rule, be kept by the company in a condition to accomplish the purpose for which they are constructed. And when they are accidentally put out of such condition, the company will be relieved of her liability for stock killed, for a reasonable time after notice or knowledge of the change in condition, to enable the railroad company to restore them to the proper condition. *The Toledo, etc., R. W. Co.* v. *Cohen*, 44 Ind. 444; *The Cleveland, etc., R. R. Co.* v. *Brown*, 45 Ind. 90.

The question in this case, then, is one simply of fact. It is this: Was the horse in question killed by the locomotive and cars of the appellant, at a point where her road was not securely fenced? We answer this question in the affirmative, for the reason that the cattle-guard, or pit, if properly constructed at first, which we do not doubt, was suffered to remain an unreasonable length of time in a condition rendering it useless, after the company had notice of its condition, and before the accident occurred.

The judgment is affirmed, with costs.