Cleveland, Cincinnati, Chicago and St. Louis R.W. Co. *v.* Dugan.

ord to show that it was ever incorporated in·a bill of exceptions; while on the contrary the bill of exceptions, or more properly speaking, what purports to be a bill of exceptions, affirmatively shows that it was not so incorporated.

Before the longhand manuscript of the evidence can become a part of the record it must not only be filed in the clerk's office, but after it is so filed, it must be incorporated in a bill of exceptions, signed and attested by the trial judge.

Citation of authorities upon a question of practice so familiar is wholly unnecessary. As the longhand manuscript has not been incorporated in a bill of exceptions, the first and second assignment of errors present no question which we can consider.

So we conclude, with the learned Attorney-General, that "*in nullo est erratum,*" and there being no error properly presented for review, the judgment is affirmed.

---

CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* DUGAN.

[No. 2,242. Filed November 5, 1898.]

PLEADING.—*Theory.*—The court will determine the theory of a pleading from the prominent or leading allegations thereof. *p. 438.*

SPECIAL VERDICT.—*Railroad.*—*Stock Killed on Right of Way.*—*Fences.*—*Negligence.*—A special verdict in an action against a railroad company for killing stock that had escaped from plaintiff's pasture, which finds that defendant had permitted its fence along such right of way to be and remain out of repair for one day preceding the injury, and which fails to find that the stock escaped by reason thereof, is insufficient to establish actionable negligence on the part of defendant. *pp. 438–442.*

From the Marion Superior Court. *Reversed.*

*Byron K. Elliott* and *William F. Elliott,* for appellant.

*Charles E. Barrett, Henry Warrum, Charles L. Holstein* and *William B. Hubbard,* for appellee.

COMSTOCK, J.—The trial of this cause was had upon the second paragraph of the complaint. The only part of said paragraph which requires consideration is as follows: "That on the 18th day of December, 1894, and for a long time prior thereto, this plaintiff was engaged in farming said lands in said section thirty-one, and especially the land lying immediately adjoining the line of railroad running through said section thirty-one. And plaintiff avers that there is a public highway running from the center of said section thirty-one north, and what is known and called the 'Crawfordsville Pike' runs east and west through the center of said section thirty-one; that about forty rods east of the west line of said section thirty-one there is a road or public highway running north and south through said section thirty-one; that the plaintiff resided on the south side of the defendant's railroad in said section thirty-one, and on the west side of said north and south road; and on said 18th of December, 1894, plaintiff was engaged in farming the lands lying immediately north of said defendant's railroad and east of said public highway running north and south, as aforesaid, through said section; that said lands lying north of said railroad consisted of a forty-acre field, which was then and there used and being used by plaintiff as a pasture for his stock, consisting of horses and cattle; that defendant along its said railroad has a right of way forty feet wide on each side of its track, and it was then and there the duty of said defendant to keep said right of way securely fenced; that plaintiff's pasture field extended to said right of way. That on the 18th day of December, 1894, this plaintiff was engaged in pasturing said lands, as he had the lawful right to do, and among the stock so being pastured was a chestnut sorrel colt, two years old; that wholly unknown to

this plaintiff the defendant carelessly and negligently allowed, suffered and permitted said fences along its right of way and adjoining the pasture of the plaintiff to get out of repair, so much so that the plaintiff's said horse escaped from said pasture field and got upon the defendant's said right of way, and followed the same until one of the trains of the defendant, coming from the west and on its route to the city of Indianapolis, drove said horse east to said road running north from the center of said section thirty-one, as aforesaid. That at the place where said railroad crosses said public highway running north and south from the center of said section thirty-one, it is the duty of the defendant to maintain proper and suitable guards in order that cattle, horses, and other stock may not get on said defendant's track and right of way, but the plaintiff avers that on the west side of said public highway running north from the center of said section thirty-one, at which point said public highway intersects said public highway known as the 'Crawfordsville Pike,' the defendant carelessly and negligently failed to keep and maintain any proper cattle-guards, and said place was so carelessly and negligently kept and maintained that cattle, horses, and other stock could with ease pass over the same without hindrance. That plaintiff's said horse got upon said highway north of the defendant's right of way and near the center of said section thirty-one, and started back to the pasture whence it came, and the defendant, by its agents, servants, and employes, while running a locomotive and train of cars over said railroad, negligently and carelessly ran such locomotive and cars over, against, and upon the plaintiff's said horse, and there and thereby, on said 18th day of December, 1894, crippled, maimed, injured, and killed said horse." Issues were made, a special ver-

dict returned, upon which both parties moved for judgment. The motion of appellee was sustained, that of appellant overruled, and proper exceptions reserved. The questions for decision arise on the rulings on these motions.

Appellant contends that the theory of the complaint is that the appellant did not maintain a fence along the line of its right of way, and because of that breach of duty, the horse of appellee entered upon the track of the appellant.

Numerous decisions support the following propositions: (1) A pleading must proceed upon a definite theory, and be good on that theory, or it will not be good at all. (2) Each theory must be embodied in a separate paragraph, and no more than one theory can be pleaded in a single paragraph. (3) As only one theory can be contained in a single paragraph, the court must construe the pleading most strongly against the pleader, and determine the theory from the prominent or leading allegations of the pleading. The following authorities are cited in support of the first proposition: *Phenix Ins. Co.* v. *Rogers*, 11 Ind. App. 72; *Smith* v. *Roseboom*, 10 Ind. App. 126; *Terre Haute, etc., R. R. Co.* v. *McCorkle*, 140 Ind. 613; *Bremmerman* v. *Jennings*, 101 Ind. 253; *Feder* v. *Field*, 117 Ind. 386; *Chicago, etc., R. R. Co.* v. *Bills*, 104 Ind. 13; *Louisville, etc., R. W. Co.* v. *Godman*, 104 Ind. 490; *Cole Bros.* v. *Wood*, 11 Ind. App. 37. In support of the second: *Bateman* v. *Snoddy*, 132 Ind. 480. In support of the third: *Pittsburgh, etc., R. W. Co.* v. *Sullivan*, 141 Ind. 83.

The specific breach of duty charged is the failure to fence at the place where the horse escaped from the pasture field. The alleged proximate result of the failure to fence was the escape of the horse, and its entry upon appellant's track. Substantially, the averments

of the complaint concerning the cattle-guard, are as follows: The general averment of duty of appellant to maintain a sufficient cattle-guard, and its failure to perform such duty; that the "plaintiff's horse got upon said highway north of defendant's right of way, and near the center of section thirty-one;" that the horse started back to the pasture; that the defendant negligently and carelessly ran its locomotive against and over said horse.

The condition of the cattle-guard is not shown to be the proximate cause of the injury. There is no statement of fact showing that the condition of the guard was the cause of the alleged injury. It is not alleged that the horse passed over the cattle-guard. The particular land is described. The place of entry is specifically alleged.

Looking to the leading allegations of the complaint to ascertain its theory, we conclude that the theory for which appellant contends is correct.

Appellee must, then, recover, if at all, upon the findings of the special verdict that the animal escaped onto the right of way at the place particularly described as having been insecurely fenced. *Louisville, etc., R. W. Co.* v. *Renicker*, 8 Ind. App. 404.

The special verdict must contain every fact essential to entitle the plaintiff to recover, or the judgment must be for the defendant. *Trittipo* v. *Morgan*, 99 Ind. 269; *Dixon* v. *Duke*, 85 Ind. 434; *Waymire* v. *Lank*, 121 Ind. 1; *Louisville, etc., R. W. Co.* v. *Miller*, 141 Ind. 533; *Town of Freedom* v. *Norris*, 128 Ind. 377; *O'Neal* v. *Chicago, etc., R. W. Co.*, 132 Ind. 110; *Shipps* v. *Atkinson*, 8 Ind. App. 505.

Conclusions in a special verdict will be disregarded. *Hankey* v. *Downey*, 3 Ind. App. 325; *Chicago, etc., R.W. Co.* v. *Burger*, 124 Ind. 275; *Louisville, etc., R. W. Co.* v. *Balch*, 105 Ind. 93.

Facts must be stated upon which the jury base the inference found. *Smith* v. *Wabash R. R. Co.,* 141 Ind. 92; *Cincinnati, etc., R. W. Co.* v. *Grames,* 136 Ind. 39; *Keller* v. *Gaskill,* 9 Ind. App. 670; *Walkup* v. *May,* 9 Ind. App. 409; *City of Bloomington* v. *Rogers,* 13 Ind. App. 121; *City of Bluffton* v. *McAfee,* 12 Ind. App. 490; *Cleveland, etc., R. W. Co.* v. *Hadley,* 12 Ind. App. 516; *Louisville, etc., R. W. Co.* v. *Sears,* 11 Ind. App. 654.

The facts found must support the theory of the complaint or judgment must be given in favor of defendant. *Chicago, etc., R. W. Co.* v. *Burger, supra; Louisville, etc., R. W. Co.* v. *Renicker, supra,* and cases there cited; *Gregory, Admr.,* v. *Cleveland, etc., R. R. Co.,* 112 Ind. 385; *Bremmerman* v. *Jennings, supra; Price* v. *St. Louis, etc., R. W. Co.,* 72 Mo. 414; *Cincinnati, etc., R. W. Co.* v. *McLain,* 148 Ind. 188.

It must state facts showing a breach of duty. General statements that negligence exists are not sufficient. Ultimate facts must be found. The only finding is that the fence was out of repair, but this alone would not make the verdict good. The answers to the interrogatories affirmatively show that there is no evidence that the horse escaped from the field and entered on the right of way at the point where the fence is alleged to have been out of repair. The findings on this question are as follows: "Interrogatory 6. Did the sorrel horse of the plaintiff escape on said date from the lands occupied by the plaintiff through or over said fence dividing such land from said defendant's right of way at a point where the same is out of repair, and enter the defendant's right of way? Answer. Do not know. Have no evidence. Interrogatory 24. Where did the chestnut sorrel colt leave the field or the premises occupied by the plaintiff?

Answer: Do not know. Interrogatory 26. Were there any tracks or indications that a horse or horses had got out of the place where three wires of the fence sagged along the line of the field into which the chestnut sorrel colt was turned on the night of the 17th of December, 1894. Answer: No."

The special verdict does not show negligence. Negligence will not be presumed. The only statement is that the fence was out of repair, but this alone would not make the verdict good. A railroad company is not at fault unless it fails to repair within a reasonable time. *Toledo, etc., R. W. Co.* v. *Cohen*, 44 Ind. 444; *Robinson* v. *Grand Trunk R. W. Co.*, 32 Mich. 322; *Chicago, etc., R. R. Co.* v. *Saunders*, 85 Ill. 288; *Hilliard* v. *Chicago, etc., R. W. Co.*, 37 Ia. 442; *Clardy* v. *St. Louis, etc., R. W. Co.*, 73 Mo. 576; *Murray* v. *New York, etc., R. R. Co.*, 4 Keys 274; *Pittsburgh, etc., R. W. Co.* v. *Eby*, 55 Ind. 567; *Cleveland, etc., R. R. Co.* v. *Brown*, 45 Ind. 90.

The finding upon this point is (interrogatory 27): "When was it first discovered that three wires of said fence sagged down? Answer: About 10 o'clock a. m."

Taking this answer to mean that the condition of the fence was discovered on the 17th of December, 1894, the horse having been killed on the night of the 17th or 18th, we cannot hold, under the foregoing authorities, that it had been permitted to remain out of repair an unreasonable length of time before the accident.

Counsel for appellee contend that the condition of the cattle-guard is properly within the issue, and that the manner of the injury was the entering of the right of way over the insufficient guard. For the reasons heretofore given, we cannot concur in this view.

Appellant was called to answer as to the fence be-

tween the right of way and pasture. The answers to interrogatories show that the horse was killed on a public highway, and that it did not get on the right of way where the fence was out of repair. We conclude, therefore, that the court erred in sustaining appellee's motion, and overruling appellant's motion for judgment.

Judgment reversed, with instructions to the trial court to render judgment in favor of appellant.