Filed Dec. 19, 1893.

---

No. 15,137.

## The Cincinnati, Indianapolis, St. Louis and Chicago Railway Company *v.* Grames.

Railroad.—*Personal Injury.—Damages.—Special Verdict.—Sufficiency of.—Ordinary Care.—Contributory Negligence.—Law and Fact.*—In an action for damages against a railroad company for injuries received by plaintiff while crossing the railroad with a wagon and team, the special verdict as to plaintiff's negligence found that plaintiff, with his brother, had crossed the railroad at the same place, from the opposite direction, but a short time before, and had observed the condition of the crossing, the view of the railroad and of approaching trains from either direction being obstructed by high buildings within a few feet of the railroad tracks, the building on the south side of the street and west side of the tracks being within three feet of the side track on which a box car was standing, the north end of which was near the middle of the street, the side track being but five and one-half feet west of the main track; that under these circumstances plaintiff, with his brother, attempted to recross the tracks, and stopping his team sixty feet west of the crossing, he looked and listened for approaching trains, and hearing and seeing none, he and his brother drove the team in a walk to make the crossing, one looking and listening south for trains, and the other looking and listening north for the same, and saw and heard none until the team was upon the main track, when it was struck by an engine approaching from the south, at the speed of thirty miles an

136    39
141    98
141    548
142    624
143    202
136    39
146    153
146    319
147    40
136    39
148    63
148    342
151    399
151    596
151    602
152    516
152    597
136    39
155    644
136    39
160    152
136    39
164    373
164    410
136    39
166    306

Cincinnati, Indianapolis, St. Louis and Chicago Ry. Co. v. Grames.

hour, and without giving the statutory signals, nor any signals of its approach, whereby plaintiff was injured, etc.; that plaintiff could not have heard or seen the approaching train while so driving from the point where he stopped to the main track.

*Held*, that the special verdict of the jury is not sufficient to warrant a judgment in favor of the plaintiff, by reason of the failure of the jury to find the inferential fact, from the facts found, that he exercised ordinary care under the particular circumstances in the case.

NEGLIGENCE.—*Law and Fact.*—*When a Question of Fact.*—Where there is room for difference of opinion between reasonable men as to the existence of facts from which negligence, if found, must be inferred, or where there is room for difference of opinion as to inferences which might be fairly drawn from conceded facts, the question of negligence must be left to the jury, as one of fact.

From the Clinton Circuit Court.

*J. T. Dye, B. K. Elliott* and *W. F. Elliott*, for appellant.

*A. C. Harris, P. H. Dutch* and *J. G. Adams*, for appellee.

COFFEY, J.—This was an action by the appellee, in the court below, to recover damages on account of a personal injury.

The complaint alleges, among other things, that on the 31st day of August, 1887, the appellant, as an organized corporation, was the owner, and was in the possession of a railway which it was operating through Boone county, in this State; that on that date it, by its servants, was running a freight train on its railway through the town of Thorntown, in that county; that the appellee, in company with his brother, was traveling over and upon a public highway in said town, known as Main street; that the appellant's railway track intersects and crosses said highway in the town, at a point about seventy-six feet east of the intersection of Main street with Pearl street; that appellee approached the railway crossing in a two-horse wagon, from the west; that on either side of Main street, west of the crossing, for the distance

of one-half mile or more, there were high buildings which, after appellee passed out of Pearl street in going east towards said crossing, greatly obstructed the view of appellant's railway track; that the view of appellant's railway track and passing trains was also obstructed by a box car which appellant had unlawfully and negligently left standing upon its side track which crossed Main street parallel with the main track; that while appellant, on the day named, was in the act of passing over said crossing, in his wagon, an engine and some cars attached thereto, conducted by the appellant's servants, approached said crossing from the southeast, running at a negligent, rapid, and reckless rate of speed, said servants negligently omitting to give any signal or notice whatever of the approach of said engine and cars; that while engaged in said negligent conduct, the engine so conducted by them collided with the wagon upon which appellee was riding, casting and throwing him against the iron rails and the ties upon the track of appellant's railway; that, by reason of the injuries thus received, he is permanently disabled, and will, in the future, be unable to perform any kind of manual labor or pursue any kind of business; that such injuries were wholly caused by the negligent conduct of the appellant as above set forth, and that the appellee did not contribute in any way whatever to produce the same, and that he was without fault on his part.

Issue being joined on this complaint, the cause was tried by a jury, resulting in a special verdict, upon which the court, over a motion for a new trial, rendered judgment for the appellee.

In this court, the appellant assigns as error:

"*First.* That the circuit court erred in rendering judgment for the appellee on the special verdict of the jury.

"*Second.* That the circuit court erred in overruling the appellant's motion for a new trial."

The special verdict fully establishes the negligence of the appellant in the matters alleged in the complaint. Indeed, it is not contended by the learned counsel for the appellant that the negligence of its employes, on the occasion of the injury of which complaint is made, was not of such a character as to render it liable, provided the appellee was not guilty of negligence which contributed to his injury. It is contended, however, that it does not appear from the special verdict that the appellee was not guilty of contributory negligence.

Before entering upon an examination of the verdict, under immediate consideration, it may not be improper to state some of the legal rules by which we are to be governed in determining its sufficiency to authorize a judgment for the appellee.

While in some jurisdictions it is otherwise, it is firmly settled, in this State, that contributory negligence is not a matter of defense, and that the plaintiff, by pleading and proof, must affirmatively show that he did not, by his own negligence, contribute to the injury for which he sues, before he can recover. *Cincinnati, etc., R. R. Co.* v. *Butler,* 103 Ind. 31; *Lyons* v. *Terre Haute, etc., R. R. Co.,* 101 Ind. 419; *Cincinnati, etc., R. W. Co.* v. *Hiltz-hauer,* 99 Ind. 486.

It seems to be settled, also, in this State, that where one approaches a point upon the highway where a railroad track is crossed upon the same level, it is his plain duty to proceed with caution, and if he attempts to cross the track, either on foot or in a vehicle of any description, he must exercise, in so doing, what the law regards as ordinary care under the circumstances. He must assume that there is danger and act with ordinary prudence and circumspection upon that presumption.

It has also been repeatedly held by this court that the law proceeds "beyond the featureless generality that one must do his duty in this respect, or must exercise ordinary care under the circumstances. The law defines precisely what the term 'ordinary care under the circumstances,' shall mean in these cases. In the progress of the law, the question of care at railway crossings, as affecting the traveler, is no longer, as a general rule, a question for the jury. The quantum of care in a large class of cases is exactly prescribed as matter of law. In attempting to cross, the traveler must listen for signals, notice signs put up as warnings, and look attentively up and down the track. * * * If a traveler, by looking, could have seen an approaching train in time to escape it, it will be presumed, in case he is injured by a collision, either that he did not look, or if he did that he did not heed what he saw."

The presence of a railroad track, upon which a train may at any time pass, is notice of danger, and it is the duty of a person about to cross such road, on a public highway, to exercise caution in doing so, and to look both ways for approaching trains, if the surroundings are such as to admit of such a precaution. It is also held that cases may arise in which the question as to whether a person injured at a railroad crossing did or did not exercise ordinary care under the circumstances, becomes one of fact to be determined by the jury under proper instructions by the court. Beach on Contributory Negligence, p. 191, section 63; *Ohio, etc., R. W. Co. v. Hill, Admx.*, 117 Ind. 56; *St. Louis, etc., R. W. Co.* v. *Mathias*, 50 Ind. 65; *Pittsburgh, etc., R. W. Co.* v. *Martin*, 82 Ind. 476; *Terre Haute, etc., R. R. Co.* v. *Clark, Admr.*, 73 Ind. 168; *Pennsylvania, etc., R. R. Co.* v. *Righter*, 42 N. J. L. 180; *Conner* v. *Citizens' Street R. W. Co.*, 105 Ind. 62; *Bellefontaine R. W. Co.* v. *Hunter*,

33 Ind. 335; *Indiana, etc., R. W. Co.* v. *Greene*, 106 Ind. 279; *Mann* v. *Belt R. R. and Stock Yard Co.*, 128 Ind. 138; *Hathaway* v. *Toledo, etc., R. W. Co.*, 46 Ind. 25; *Cincinnati, etc., R. R. Co.* v. *Butler*, 103 Ind. 31.

With these established principles before us, we proceed to an examination of so much of the special verdict in this case as tends to throw light upon the question as to whether the injury for which the appellee sues is, in any degree, to be attributed to his negligence, and as to whether it appears therefrom that he was not guilty of contributory negligence.

It appears from the special verdict of the jury that on the 31st day of August, 1887, the appellee, who at that time resided on a farm eight miles southeast of Thorntown, in Boone county, brought a load of wheat into town on a two-horse wagon, arriving about ten o'clock in the morning. He came into town from the east, on Main street, and in doing so crossed the appellant's railroad track which, at this point, runs north and south; and saw the situation and surroundings at the crossing, and the position of a box car which stood on the side track at the crossing.

After unloading his wheat, he hitched his team on Peal street, where it remained for a short time, after which he unhitched it, returned to the wagon with his brother, and started in a northeasterly direction to Main street and to a point on Main street sixty feet west of the point where Main street crosses the main track of the appellant's road and in full view of the crossing. At this point appellant stopped his team for the period of one minute, and he and his brother listened and looked for approaching trains. He started towards the crossing, directing his brother to look and listen for approaching trains from the north, while he listened for trains approaching from the south.

At the crossing there is a space of five and one-half feet between the main track and the side track, the side track being on the west of the main track.   Main street is one hundred feet in width.   On the south side of this street, and abutting thereon, is a two-story brick building extending from Pearl street east seventy-six feet, to a point within three feet and four inches of the west rail of the side track above mentioned.   On the north side of the street, and abutting thereon, is a three-story frame building extending east from Peal street to the appellant's right of way, on which its railroad tracks above mentioned are located.   East of the railroad tracks, and abutting on the north side of Main street, is a two-story frame house, known as Adair's hotel, the west end of which building is within twenty feet of the east rail of appellant's railroad track.

There is, also, on the east side of the railroad track, and abutting on the south side of Main street, a two-story brick building, the west side of which extends south along the track, the northwest corner of which building is fifteen feet from the east rail.   Between this building and the building on the west side of the railroad, on the same side of the street, is a distance of forty-six feet.   There is constructed on the west side of the railroad tracks for a distance of two blocks, either way, north and south from the Main street crossing, buildings and sheds except at street and alley crossing, which obstruct a view of the tracks and approaching engines and cars from any point on Main street within a distance of ninety feet west until a point is reached within twelve feet of the west rail of the side track. These buildings and sheds obstructed the view of the appellee as he approached the crossing.   At the time of the accident under immediate consideration a box car, thirty-four feet in length, stood on the side track, the north

end of which car was at a point within four feet of the center of Main street, and was located south of the center of the street.

When the appellant stopped his team in Main street within sixty feet of the crossing, and before starting to the crossing, he and his brother listened for the approach of trains, and did not hear any such train or the sound of any whistle, bell, or other signal. He immediately started for the crossing, driving his team in a walk, looking and listening for the approach of trains, until his horses passed upon the main track of the railroad, but did not see or hear any such train.

While so driving from the point where he stopped to the main track, the appellee could not have heard or seen the approach of an engine or train of cars by the exercise of his sense of seeing or hearing.

When appellee's horses reached the main track of appellant's road, they were struck by an engine approaching from the south at a speed of thirty miles an hour, by means of which appellee was thrown from his wagon, suffering permanent injuries.

It is further found by the jury that the box car above mentioned obstructed the view and hearing of the appellee to such an extent that he was not able to see or hear the approaching engine which collided with his team, and that had it not been for such car he would have seen the same in time to avoid such collision; and that if the appellant's employes had sounded the whistle or rung the bell in approaching the crossing the appellee would have heard the same in time to have avoided the injuries for which he sues.

The appellee had never been in the town prior to the day of this accident, except one occasion, and that was two years prior to his injury, when he passed through the town of Thorntown, but, on the day of his injury, he

passed over this crossing in coming into town, and saw its condition and surroundings.

This is a statement, in brief, of all the facts found by the jury tending, in any degree, to throw light upon the question as to whether the appellee was or was not guilty of contributory negligence.

From these facts it is earnestly contended by the appellant, with much plausibility, that inasmuch as the appellee's view of the railroad track was completely cut off by the surrounding buildings and sheds, until he reached a point within twelve feet of such track, he should have stopped at that point to look for approaching trains, and as he did not do this, but drove upon the track without such precaution, he did not exercise ordinary care under the circumstances, and for this reason he was guilty of contributory negligence.

On the other hand, it is contended by the appellee that the facts above stated show that he exercised all the care that the law requires in approaching the crossing where he was injured, and for this reason it should be held that he was not guilty of contributory negligence. To state the contention of the parties more accurately, it is contended by the appellant, that, from the facts above stated, we should adjudge, as a matter of law, that the appellee was guilty of contributory negligence, while the appellee contends that we should adjudge, as a matter of law, from such facts, that he was not guilty of contributory negligence.

The first question, therefore, for consideration is this: Can we adjudge, as a matter of law, from the facts disclosed by the special verdict of the jury in this case that the appellee, on the occasion of his injury, was guilty of negligence, which contributed to such injury?

It is asserted by many text writers, as well as by many courts of last resort, that the cases in which the court

can adjudge, as matter of law, that negligence does or does not exist seldom arise. To this declaration, thus broadly asserted, we can not give our unqualified assent. The fact is more correctly stated, we think, by Judge Cooley in his Work on Torts (2d ed.), page 805, where he says: "But in the great *majority* of cases the question of negligence on any given state of facts must be one of fact."

While we believe it to be true that in the majority of cases involving the question of negligence such question is one of fact for the jury, we do not believe it to be true that cases do not frequently come before the courts in which the court may adjudge, as matter of law, upon the undisputed facts in the case, that negligence does or does not exist. Thus, in the case under immediate consideration, we have the facts found by the jury that the engine which collided with the appellee's team approached the crossing at which the collision occurred, without ringing the bell or sounding the whistle, and that it was running at a very rapid rate of speed through a populous town, at a time in the day when it was likely to come into collision with persons or teams on the public crossing. We have no trouble in adjudging, as a matter of law, that the appellant's servants were guilty of negligence in approaching the crossing without sounding the whistle or ringing the bell, because they were neglecting to perform a duty enjoined by statute designed to protect from injury persons approaching the crossing.

The assertion, so often repeated in our reported cases, to the effect that the law precisely defines what the term "ordinary care under the circumstances" shall mean when applied to a person approaching a railroad crossing is the enunciation of a general rule, but like most other general rules, it has exceptions. Thus, in approaching a crossing, the law requires that the

traveler shall listen for signals, must take notice of the signs put up as warnings, must look attentively up and down the track, if the surroundings are such as to admit of this precaution, and he must not attempt to cross in front of a moving train.

If he neglects these precautions, and by reason of such negligence is injured, the court will adjudge, as a matter of law, that he has been guilty of contributory negligence. In such cases the law not only prescribes the kind of care to be used, but it fixes, also, the exact quantity of care.

It is plain, however, we think, that in very many cases the question as to whether a person injured at a crossing exercises ordinary care under the particular circumstances, is one for the jury. The court can not adjudge that negligence exists as a matter of law in any case, unless the facts are undisputed and the conclusions to be drawn therefrom are indisputable.

"The question of negligence must be submitted to the jury as one of fact not only where there is room for difference of opinion between reasonable men as to the existence of the facts from which it is proposed to infer negligence, but also where there is room for such difference as to the inferences which might fairly be drawn from conceded facts." 1 Shearman and Redfield Negligence, vol. 1 (4th ed.), section 54.

In support of this text are cited *Hart* v. *Hudson Railroad Bridge Co.*, 80 N. Y. 622; *Bernhard* v. *Rensselaer, etc., R. R. Co.*, 1 Abb. Ct. App. 131, 32 Barb. 165; *Johnson* v. *Bruner*, 61 Pa. St. 58; *Dahl* v. *Milwaukee R. R. Co.*, 62 Wis. 652; *Central, etc., R. R. Co.* v. *Hotham*, 22 Kan. 41; *Gaynor* v. *Old Colony R. R. Co.*, 100 Mass. 208; *Mangam* v. *Brooklyn*, 38 N. Y. 455; *Haycroft* v. *Lake Shore R. R. Co.*, 64 Id. 636; *West Chester, etc., R.*

*R. Co.* v. *McElwee*, 67 Pa. St. 311; *Patterson* v. *Wallace*, 1 Macq. H. L. Cases, 748; which fully sustain it.

As sustaining this rule, see, also, Cooley on Torts (2d ed.), pp. 800–5; Whitaker's Smith on Negligence, p. 40, note.

"Whenever there is any doubt as to the facts, it is the province of the jury to determine the question; or whenever there may reasonably be a difference of opinion as to the inferences and conclusions from the facts, it is likewise a question for the jury." Beach on Contributory Negligence (2d ed.), pp. 569–70.

This rule was adopted by this court in the case of *Ohio, etc., R. W. Co.* v. *Collarn*, 73 Ind. 261, and has been steadily followed in all subsequent cases requiring its application. *Baltimore, etc., R. R. Co.* v. *Walborn*, 127 Ind. 142; *Mann* v. *Belt R. R. and Stock Yard Co.*, *supra*; *Shoner* v. *Pennsylvania Co.*, 130 Ind. 170.

In this case, as we have seen, the appellee stopped in Main street sixty feet from the crossing at which he was injured, and looked and listened for approaching trains. When the jury say he looked, we must take it that he looked at or toward the crossing, for it is shown that his view of the railroad track was completely cut off, except at that point. Without any other stop, he drove upon the crossing and collided with an engine and cars. It is probable that he was unable to obtain a view of the track to the south, the direction from which the engine came, by reason of the building on the south side of Main street, and by reason of the obstruction created by the box car negligently left by the appellant in the street on its side track. Knowing of the existence of these obstructions, whether he should have stopped immediately before entering upon the track, is a question about which, we think, there is room for a difference of opinion. Not having done so, one impartial sensible

Cincinnati, Indianapolis, St. Louis and Chicago Ry. Co. *v.* Grames.

man might, with much reason, say that he was guilty of negligence, while another man, equally as impartial and sensible, might say that he exercised all the caution that a man of ordinary prudence would have exercised under the circumstances, and that he was not negligent. For this reason, we can not adjudge, as a matter of law, that he was guilty of negligence. The question as to whether he exercised ordinary care under the circumstances was, under the authorities above cited, we think, a question for the jury.

Can we adjudge, as a matter of law, from those facts, that the appellee was not guilty of contributory negligence?

If the jury had returned a general verdict, either for the appellant or the appellee, and the facts disclosed by the special verdict in this case had been made to appear by answers to special interrogatories, we do not think we could disturb such general verdict as being in conflict with the answers to interrogatories. A general verdict for the appellant would necessarily have embraced a finding that the appellee had been guilty of contributory negligence, while a general verdict for the appellee would have included a finding that he was guilty of no such negligence. But here we have no general verdict. The verdict is special and does not find whether the appellee did or did not exercise ordinary care under the particular circumstances. If the verdict embraced this finding, the case would be free from difficulty, but without such finding, to entitle the appellee to judgment, we must draw the inference of fact from the facts found by the jury, that he did exercise ordinary care under the particular circumstances in this case. This we are not permitted to do. We must take the verdict as it comes to us, and can add nothing to it.

The ultimate fact, without which the law can not pass

judgment, namely, the fact that the appellee did or did not exercise ordinary care under the circumstances surrounding him at the time of his injury, remains undetermined. It may be that the facts found by the jury would authorize the inference of fact that the appellee exercised ordinary care, but if so, that inference should be found by the jury to entitle him to judgment. We do not mean to hold that if the jury should draw inferences from given facts, which were wholly unauthorized, the finding would be permitted to stand, but where two inferences may be reasonably drawn from any given state of facts, and the jury finds one of such inferences, this court would have no more power to interfere with such finding than it would with any other finding of fact made by the jury. For this reason it is necessary for the jury to state the facts, in their verdict, upon which they base the inference found by them.

In our opinion, the verdict of the jury in this case is not sufficient to warrant a judgment in favor of the appellee, by reason of the failure of the jury to find the inferential fact, from the facts found, that he exercised ordinary care under the particular circumstances in this case.

In reaching this conclusion, we have not overlooked the cases of *Pittsburgh, etc., R. R. Co.* v. *Spencer*, 98 Ind. 186; *Indianapolis, etc., R. W. Co.* v. *Bush*, 101 Ind. 582, and *Conner* v. *Citizens' St. R. R. Co.*, *supra*.

The first two cases hold, and we think correctly, that a general statement of the jury, in a special verdict, to the effect that a particular act was or was not negligent, is the statement of a mere conclusion, and will be ignored by this court. But there is a very broad distinction between that kind of statement and the finding of an inferential fact from the existence of other stated

facts. These cases in nowise conflict with the conclusion at which we have arrived in this case.

What was said in the case of *Conner* v. *Citizens' St. R. R. Co.*, *supra*, upon the subject of the right of the jury to find inferential facts is, we believe, unsupported by authority, and was wholly unnecessary to a decision of the case, inasmuch as the special verdict was sufficient to authorize a judgment for the appellee without the finding of inferential facts.

Where the finding of an inferential fact, however, is necessary to maintain the action, such fact must be found by the tribunal trying the cause. Such is the effect of all the authorities citied above upon that subject, and we know of no authority to the contrary.

Judgment reversed, with directions to the circuit court to grant a new trial.

Filed Sept. 21, 1893; petition for rehearing overruled Dec. 14, 1893.