Filed April 9, 1895.

———————◆———————

No. 16,878.

SMITH v. THE WABASH RAILROAD COMPANY.

RAILROAD.—*Collision with Traveler at Crossing.—Presumption of Negligence.*—When a person crossing a railroad track is injured by collision with a train, the fault is *prima facie* his, and he must affirmatively show that his fault or negligence did not contribute to the injury, before he is entitled to recover for such injury.

SAME.—*Duty of Person Approaching Track to Look.—Question for Court.* —When a person approaches a railroad crossing on a level with the track, it is his duty to proceed with caution, whether on foot or in

Smith *v.* The Wabash Railroad Company.

a vehicle, and he must exercise ordinary care under the circumstances in so doing. The question of care at railway crossings as affecting the traveler, is, as a rule, a question for the court.

SAME.—*Traveler at Crossing — Looking for Train — Presumption that He was Negligent.*—In attempting to cross a railroad track, a traveler must listen for signals, read signs put up as warnings, and look attentively both ways for approaching trains, if the surroundings are such as to permit of that precaution. If by looking he could have seen an approaching train in time to have avoided the injury, it will be presumed in case he is injured by a collision with a train, that he did not look, or, if he did look, that he did not heed what he saw.

SAME.—*Flagman Absent from Crossing—Failure to Look for Approaching Train.*—A traveler at a railway crossing is not excused from looking and listening for a train by reason of the fact that he knew a flagman was accustomed to be at the crossing and give warning of approaching trains, and at the time of the injury, not seeing the flagman, he presumed there was no danger from an approaching train, and in acting upon that presumption he attempted to cross and was injured.

NEGLIGENCE.—*Statute of Another State on Presumption of Negligence.— Extraterritorial Force.*—The statute of another state concerning the presumption of negligence pertains to the remedy and has no extraterritorial force.

SPECIAL VERDICT. — *Negligence—Finding of Ultimate Fact — Two or More Inferences to be Drawn from Facts—Jury Drawing.*—Only where the facts found by the jury are such that two or more inferences may be reasonably drawn from them under the law that the finding by the jury of one of such inferences will be regarded by the court. In such a case the ultimate fact must be stated by the jury in favor of the party seeking a recovery, or judgment will be rendered thereon against him. If the facts found are such that the court can adjudge as a matter of law that the injured party was or was not guilty of contributory negligence, then the finding of such ultimate fact, whatever it may be, will be disregarded by the court.

From the Warren Circuit Court.

*W. A. Rabourn, L. Nebeker,* and *D. W. Simms,* for appellant.

*E. P. Hammond, C. B. Stuart* and *W. V. Stuart,* for appellee.

MONKS, J.—This was an action by appellant against appellee to recover damages on account of a personal in-

jury sustained by him at a point where appellee's railroad crosses Main street in the city of Danville, Illinois.

A special verdict was returned and judgment was rendered thereon in favor of appellee. This ruling of the court is assigned as error here.

Unless all the facts essential to a recovery by appellant are found in the special verdict, there was no error in rendering judgment thereon in favor of appellee.

It is stated in the special verdict, that Main street, in the city of Danville, Illinois, was, when the injury complained of was inflicted, the principal thoroughfare east and west through said city, and was much traveled; that appellee's railroad tracks cross said street, and that appellee had, for sixteen years prior to that time, kept a flagman at said crossing, between the hours of 7 o'clock A. M. and 6:30 o'clock P. M. of each day, to warn all passengers approaching said crossing of the danger from locomotives and trains of cars; that appellant had frequently crossed said railroad on Main street, prior to September 15, 1891, when said injury was inflicted, and had seen the flagman at said crossing, and received warnings from him at various times, and had become accustomed to depend on said flagman for warning if it were not safe; that appellee had erected a flagman's house on the south side of Main street, and west of the tracks; that Main street, including sidewalks, is eighty feet wide at said crossing, and is paved with bricks, and was crossed by four tracks of appellee's road; that appellee's passenger depot is on the west side of its tracks, about 180 feet north of Main street; that about 100 feet west of the railroad tracks, and on the north side of Main street, is a three-story brick building called the "Russel House;" that there are no buildings in the angle, and space between the Russel House and the south end, and side of said passenger depot, and the view, from said

point east from said Russel House to said railroad tracks, and from said Main street north to the south end of said passenger depot, was unobstructed, and a person approaching said railroad track on Main street, going eastward, can, at a point 100 feet west of said crossing, see north on said tracks 345 feet; and from a point 80 feet west of said crossing, 400 feet; and from a point 60 feet west from said crossing, 470 feet; and from a point 40 feet west of said crossing, 690 feet; and from a point 30 feet west of said crossing, 1,280 feet; and from a point 12 feet west of said crossing, a quarter of a mile; that appellant believed that all trains passing on said road stopped at said passenger depot; that on the 15th day of September, 1891, appellant, not exceeding ten minutes before he was injured, was approaching said crossing from the west driving a two-horse wagon, sitting high up, and saw a passenger train pass over said crossing rapidly, going south; that immediately after said train passed, appellant passed over said crossing and went about a block and turned his team around and drove back over said crossing and back into said city to get some nails he had forgotten, and, not being able to get them, went on said Main street eastward, approaching said crossing; that when he came within 100 feet of said crossing, he looked and saw that no train was approaching between the passenger depot and the crossing, and turned his attention and sight to the flagman's house, to the south of Main street, and did not look up the track north a second time to see if any locomotive or train of cars was approaching said crossing, but looked for the flagman and any sign of warning of approaching train or danger, and not seeing the flagman or any sign or signal of danger, he did not look further for the train or stop his team, but continued to approach said crossing slowly, looking to see if said flag-

man would appear and give him any warning or signals of approaching train or danger, and not seeing any flagman or sign of danger and not seeing any danger or hearing any approaching train, and relying upon the said flagman to give him warning or signal of any approaching train or danger, drove his said team and wagon upon said crossing in the belief that there was no danger in so doing; that as appellant drove his horses drawing said wagon upon the railroad track at said crossing, a locomotive, with the headlight burning, and train of cars, without stopping at the depot, approached at a rate of speed of more than ten miles an hour from the north and struck plaintiff; that appellant did not know it was the custom not to have a flagman at said crossing after 6:30 P. M. of each day; that said flagman was not at said crossing on the two occasions when appellant crossed the same, just prior to the injury; that it was between 6:30 o'clock P. M. and 7 o'clock P. M. of said day when appellant was injured, and there was no flagman at said crossing at the time when he approached and drove upon said crossing; that at the time he was injured he did not, after first coming into view of the track to the passenger depot, look up the track north a second time to see if any train of cars was approaching said crossing, but kept looking towards the southeast and to the right to the flagman's station and for the flagman; that he did not hear the approaching train which injured him until it was within ten or fifteen feet of him; the bell on said engine was rung but was not heard by appellant; such bell when rung could be heard one hundred yards; that appellant did not, as he approached said crossing, stop his team and listen for an approaching train; that appellant had frequently passed on said crossing prior to the day on which he was injured without seeing the flagman or receiving a signal of warning from him, and

upon such occasions had always passed the crossing safely; that appellant used proper care and caution in driving upon said crossing when he was injured; that he was deceived and misled into believing it was safe and proper to go upon the said crossing at such time by the act of appellee in not maintaining a flagman at said crossing, and in not giving him any warning or signal of danger, and in passing said passenger train over said crossing so recently before the said train and locomotive which struck and injured appellant; that appellant had good sight but was somewhat deaf prior to the injury; that his horses were not afraid of cars, and could have been and were controlled, and he could have turned around in Main street before reaching the crossing.

That on the said 15th day of September, 1891, and for more than eight years prior thereto, there had been in full force and effect in said city of Danville, Illinois, an ordinance requiring appellee to keep a flagman at the crossing on Main street, where appellant was injured, whose duty it was to signal and warn any person traveling in the direction of said crossing of the approach of any locomotive, car or train of cars, or other impending danger; that on said 15th day of September, and for more than ten years prior to that time, there was in full force and effect in the State of Illinois a statute which provided, that if any train, locomotive engine or car be run at a greater rate of speed in or through the incorporated limits of any city, town or village, than is permitted by any ordinance of such city, town or village, such railroad company shall be liable to the person aggrieved for all damages done the person or property by such train, locomotive engine or car, and the same shall be presumed to have been done by the negligence of said rail-

road company; that at the time said injury was inflicted, and for eight years prior thereto, there was in full force and effect in said city of Danville an ordinance providing that no locomotive engine, freight or passenger car, or train, shall be run within the limits of said city at a greater rate of speed than ten miles an hour; that the proof did not show that appellant had any actual knowledge of the existence of said ordinance, or either of them.

It is earnestly insisted by appellant, that he exercised all care required of him under the circumstances, in approaching the crossing, and was not guilty of contributory negligence.

On the other hand, appellee contends that as appellant, after he came within 100 feet of crossing, had an unobstructed view of the track looking north a distance of 345 feet, which increased as he approached the track to 1,280 feet, at thirty feet from the track, and a quarter of a mile at twelve feet from the track, he was guilty of negligence in not looking in that direction; that if he had looked he could have seen.

The rule in this state is that, when a person crossing a railroad track is injured by a collision with a train, the fault is *prima facie* his, and he must affirmatively show that his fault or negligence did not contribute to the injury, before he is entitled to recover for such injury. *Hathaway* v. *Toledo, etc., R. W. Co.,* 46 Ind. 25; *Cincinnati, etc., R. W. Co.* v. *Grames,* 136 Ind. 39.

It is settled law in this jurisdiction, that when one approaches a point where a highway crosses a railroad track on the same level, it is his duty to proceed with caution, and if he attempts to cross the track, either on foot or in a vehicle of any kind, he must exercise ordinary care under the circumstances, in so doing.    He

must assume that there is danger and act with ordinary care and prudence upon that assumption.

The law defines precisely what the term ordinary care, under the circumstances, shall mean in these cases. The question of care at railway crossings as affecting the traveler, is no longer, as a rule, a question for the jury. The question of care in a large class of cases is exactly prescribed as a matter of law.

In attempting to cross, the traveler must listen for signals, notice signs put up as warnings and look attentively both ways for approaching trains, if the surroundings are such as to admit of that precaution. If a traveler by looking could have seen an approaching train in time to avoid injury, it will be presumed in case he is injured by collision, either that he did not look, or, if he did look, that he did not heed what he saw, such conduct is negligence *per se*. *Bellefontaine R. W. Co.* v. *Hunter, Admr.*, 33 Ind. 335; *Louisville, etc., R. W. Co.* v. *Stephens*, 40 N. E. Rep. 148; *Cincinnati, etc., R. R. Co.* v. *Butler*, 103 Ind. 31; *Ohio, etc., R. W. Co.* v. *Hill, Admx.*, 117 Ind. 56; *Cincinnati, etc., R. W. Co.* v. *Grames, supra*, and cases cited; *Lake Shore, etc., R. W. Co.* v. *Geiger*, 8 Ohio C. C. Rep. 41; *Gardner* v. *Detroit, etc., R. R. Co.*, 97 Mich. 240.

The appellant admits the law to be as stated, but contends that this case is an exception for the reason that he was misled by the conduct of appellee in not keeping a flagman at said crossing. Appellant, in his brief, says "the question is, therefore, reduced to the simple question as to whether an ordinary prudent man would or might have relied upon the flagman; or, rather, was there sufficient uncertainty upon that point to entitle a jury to decide the question." Upon all the facts found, might a fair and reasonable man draw the inference and conclusion that the plaintiff was excusable, and that he ex-

ercised ordinary prudence, or can the court say, as a matter of law, that his reliance was not an exercise of ordinary prudence? Is the conclusion on this subject at which the jury arrived entitled to be received, or is it a mere conclusion without sufficient basis of fact?

It was decided by this court, in the case of *Cadwallader* v. *Louisville, etc., R. W. Co.*, 128 Ind. 518, that if a person approach a crossing with which he is familiar, and at which a flagman is stationed, and the flagman does not give notice of the approach of danger, such person would have no right to presume that none existed, and enter upon the track without looking, and if under such circumstances the person was injured the court would adjudge, as a matter of law, that he was guilty of contributory negligence, and he could not recover damages therefor. But if the flagman had done anything to induce such person to attempt to cross at the time he was injured, or anything to throw him off his guard, then the question of contributory negligence would have been a question for the jury. *Chicago, etc., R. R. Co.* v. *Hedges, Admx.*, 105 Ind. 398.

Under this rule, if the flagman had been present at the crossing when appellant was injured, and had not given notice of the approach of danger, and appellant had approached and attempted to cross, as stated in the finding, he would have been guilty of contributory negligence and the court would so adjudge as a matter of law. The absence of the flagman from the crossing was certainly not as reliable assurance that it was safe to cross as was the failure of the flagman to give the signal of danger when present.

If this is a correct proposition, and we are of the opinion that it is, then the action of the court in rendering

judgment on the special verdict against appellant, was proper.

This court said, in the case of *Cadwallader* v. *Cincinnati, etc., R. W. Co., supra:* "Assuming, in this case, that the appellant had the right to presume that no train was approaching, by reason of the failure of the flagman to give notice, yet this did not excuse her from the use of her senses of sight and hearing in order to ascertain the fact for herself. With the use of these senses she was as well able to ascertain whether a train was approaching as the flagman at the crossing, and the failure to use them was negligence.

It has often been held by this court that negligence on the part of the railroad company does not excuse the injured party from the exercise of ordinary care on his part. *Bellefontaine R. W. Co.* v. *Hunter*, 33 Ind. 335; *St. Louis, etc., R. W. Co.* v. *Mathias*, 50 Ind. 65; *Cincinnati, etc., R. R. Co.* v. *Butler, supra; Indiana, etc., R. W. Co.* v. *Greene*, 106 Ind. 279; *Indiana, etc., R. W. Co.* v. *Hammock*, 113 Ind. 1; *Ohio, etc., R. W. Co.* v. *Hill, supra.*

Appellant urges that his belief that all trains stopped at the passenger depot was a reasonable one. He certainly could not reasonably infer such fact from either the population of the city or the importance of the station. It is not a matter of common knowledge that all trains stop at passenger depots in either cities or towns. There is nothing in the special verdict showing that such belief was a reasonable one, but even if such belief was reasonable he would have no right to recklessly omit to use his senses of sight and hearing and rely entirely on his belief.

Appellant also contends that he was misled by the passenger train, which passed rapidly over the crossing going south, as he approached the crossing from the

west—the first train on the evening of September 15th. If he had been injured the first time he drove upon said crossing, immediately after said passenger train had passed over the same, a different question might be presented. But, after he passed over the crossing the first time, he drove about a block, returned, crossed the track again, going back into the city, and then returned and attempted to cross the railroad track and was injured. This case, therefore, does not come within the rule stated in *Chicago, etc., R. W. Co.* v. *Boggs*, 101 Ind. 522, and other cases cited by appellant, nor does it belong to that class of cases.

In that case the plaintiff and her husband approached the track running along a highway to cross the same. As they neared the crossing they heard a locomotive and train approaching, and stopped until the train had passed. As soon as the train cleared the track they started the horse and attempted to cross the track, but the wagon was struck by a train which followed the one that had gone over the crossing, and plaintiff was injured, there was only a short distance between the trains, and there was an interval of very few seconds between the time the one left the crossing until the other ran upon it. The trees and bushes and their foliage obstructed the view of the crossing from the highway. The track ran through a deep cut and made a curve before reaching the crossing, and this, combined with other things, made it difficult to see an approaching train; both the plaintiff and her husband looked and listened for approaching trains as soon as they reached a point where they could see, but they neither saw nor heard the train that ran into the wagon until they had driven upon the track; the noise of the first train was so great that it drowned the sound of the whistle and bell, if these signals were given by the sec-

ond train.   Upon these facts this court held, and cor-
rectly, we think, that the question of contributory neg-
ligence was for the jury, under proper instructions from
the court.   In that case the court instructed the jury
that it was incumbent on the plaintiff and her husband
to look and listen before driving upon the track; that if
they knew of the crossing and had often passed over it,
they were bound to use more care than if they had not
previously known it.

Appellant calls attention to the case of *Cincinnati, etc.,
R. W. Co.* v. *Grames, supra,* as authority in this case.

In that case it appears, from the special verdict, that
the injured party approached a crossing in Thorntown
about 10 o'clock A. M.; he and his brother stopped the
team about sixty feet west from, and in full view of, the
crossing for one minute and they both listened and
looked for approaching trains, but they did not hear any
train or the sound of any whistle, bell or other signal.
He started towards the crossing, directing his brother to
look and listen for trains approaching from the north
while he listened for trains approaching from the south.
Buildings and sheds obstructed the view until about
twelve feet from the side track.   A box car thirty-four
feet in length stood on the side track, the north end of
which was within four feet of the center of Main street,
on which the team was approaching the crossing.  While
so driving from the point where he stopped to the main
track, the plaintiff could not have heard or seen the ap-
proach of an engine or train of cars by the exercise
of his sense of seeing or hearing on account of said
box car and buildings.   At the crossing he was struck
by a train running thirty miles an hour; no bell was
rung or whistle sounded.   The plaintiff had never been
in town but once and that was two years before, but on
the day he was injured, he passed over the crossing in

coming into town and saw the surroundings. There was judgment on the special verdict in favor of the plaintiff in the court below, but the same was reversed in this court.

In the Grames case, as shown by the special verdict, there was a compliance with the requirements of the law of looking and listening before reaching the crossing, and he stopped his team for a minute and looked and listened for approaching trains, and as he approached the track, he and his brother looked and listened but could not see or hear on account of the obstructions mentioned.

This court, in that case, said: "In approaching a crossing, the law requires that the traveler shall listen for signals, must take notice of the signs put up as warnings, must look attentively up and down the track, if the surroundings are such as to admit of this precaution, and he must not attempt to cross in front of a moving train. If he neglects these precautions, and by reason of such negligence is injured, the court will adjudge, as a. matter of law, that he has been guilty of contributory negligence."

The appellant did not look or listen after the first time, when he was 100 feet from the crossing. He had an unobstructed view to the north, could have seen if he had looked, and could have heard if he had listened. The surroundings were such as to admit of his looking and listening. He neglected these precautions, and, by reason thereof, was injured, and, as this court said in the Grames case, "the court will adjudge, as a matter of law, that he was guilty of contributory negligence."

Under our view of the law of this case, it is not necessary for us to determine whether or not the finding "that the plaintiff used proper care and caution in driving upon said crossing," is equivalent to a finding that the appel-

lant exercised ordinary care under the circumstances surrounding him at the time of his injury.

The rule in regard to special verdicts is, that it is only where the facts found by the jury are such that two or more inferences may be reasonably drawn therefrom under the law, that the finding by the jury of one of such inferences will be regarded by the court. In such case, the ultimate fact must be stated by the jury in the special verdict in favor of the party seeking a recovery, or judgment will be rendered thereon against him. But, if the facts found in a special verdict are such that the court can adjudge as a matter of law that the injured party was or was not guilty of contributory negligence, then the finding of such ultimate fact by the jury, whatever it may be, will be disregarded by the court. *Cincinnati, etc., R. W. Co.* v. *Grames, supra,* and authorities cited.

The statute of the State of Illinois concerning the presumption of negligence set forth in the verdict pertains to the remedy in the class of cases therein named and can have no extraterritorial force. *Johnson* v. *Chicago, etc., R. W. Co.,* 59 N.W. Rep. 66 ; *Knight* v. *West Jersey R. R. Co.,* 108 Pa. St. 250.

There is no error in the record.

Judgment affirmed.

McCabe, C. J., took no part in the decision of this case.

Filed April 12, 1895.