No. 1,469.

## Louisville, New Albany and Chicago Railway Company *v.* Stephens.

Railroad.—*Contributory Negligence.*—*Case Stated.*—*Railroad Crossing.*—*Failure to Look and Listen.*—Where the inference from the facts specially found, is irresistible that plaintiff in approaching on foot the railroad track at the rate of four miles an hour, from a point twenty feet distant, could and must have seen or heard the approaching train, about a hundred feet distant, had he looked or listened in the direction of the same, but goes upon the track in front of the same and is injured, the plaintiff is guilty of contributory negligence, where there was no act of the defendant to throw him off his guard.

From the Porter Circuit Court.

*E. C. Field, W. S. Kinnan* and *E. D. Crumpacker,* for appellant.

*N. L. Agnew* and *D. E. Kelly,* for appellee.

Davis, J.—This cause was tried by a jury and a general verdict was found for the plaintiff in the sum of three thousand five hundred dollars. The jury were also required to return special findings of fact under interrogatories submitted by the court. The injury complained of arose from one of appellant's passenger trains running against appellee at about midnight of July 9, 1893, while he was attempting to cross over the track on foot at one of the public street crossings in the city of Hammond, known as State street. The track of appellant ran through in a northwesterly and southeasterly direction, and State street crossed the track east and west. The appellee approached the track from the west and was passing east over the track on the side-

walk laid on the north side of the street. There were also tracks lying east of appellant's track and substantially parallel with it, which were owned and operated by two other railroad companies, one the Chicago and Erie and the other the Nickel Plate. On the west side of appellant's track there was a gate, and further over on the east side of the other tracks another gate, which were put in with appliances to close them on the approach of trains.

The complaint is in two paragraphs. The negligence charged against the appellant in the complaint is (1) that its train was run at a high and dangerous rate of speed, forty miles an hour, in the business part of the city where a great many persons constantly passed; (2) that a city ordinance was in force which limited the speed of trains to not greater than six miles per hour, and that the speed of the train was in violation of this ordinance; (3) that the appellant failed to ring any bell, give any signal or make any noise to warn the appellee of the approach of the train; (4) that it neglected to display any headlight upon its engine; (5) that it negligently failed to lower the gate on the west side of its railroad provided thereat to warn persons of the approach of its trains, and that appellee knew of the purpose for which the gate had been used, and relied on the fact that it stood open as an assurance that no train was approaching.

The general verdict for the appellee is of course equivalent to a finding that the appellant was guilty of some or all of these alleged acts of negligence. What appellant asserts is that the special findings of fact returned by the jury expressly overcome all the presumptions which the general verdict creates in favor of each of the alleged negligent acts except one.

The special findings are as follows:

"1. Was the plaintiff struck by the defendant's train on the State street crossing in the city of Hammond? Ans.: Yes.

"2. Was plaintiff struck by defendant's engine or cars on State street in the city of Hammond while he was attempting to cross same? Ans.: Engine.

"3. From a point about twenty feet west of defendant's track, and on the north side of said street, could the plaintiff have seen the approaching engine as far north as the crossing of the Michigan Central Railroad? Ans.: Yes.

"4. From a point about twenty feet west of defendant's railroad, on the north side of State street, was there any obstruction between said point and the track to prevent a person from seeing to the northwest along said track as far as the Michigan Central Railroad crossing? Ans.: No.

"5. What was the distance from the State street crossing to the Michigan Central crossing? Ans.: Three hundred and twelve feet.

"6. From a point about three feet west of the west rail of defendant's railroad at State street in the city of Hammond, could not a train be seen approaching from the north on defendant's track for nearly a quarter of a mile? Ans.: Yes.

"7. For what distance could the noise and rumble of the train be heard north from State street? Ans.: Twenty rods.

"8. Was the engine bell being rung on defendant's engine as it approached State street at the time plaintiff was injured? Ans.: Yes.

"9. Was the engine on defendant's train which injured plaintiff equipped with good headlight? Ans.: Yes.

"10. Was the headlight burning brightly when it approached State street at the time plaintiff was injured? Ans.: Yes.

"11. Was not the train by which the plaintiff was injured brought to a stop at the depot just south of State street? Ans.: Yes.

"12. What rate of speed was the train running as it passed State street? Ans.: Sixteen miles an hour.

"13. If the plaintiff had looked northward in the direction of the approaching train, could he not have seen the approaching train as far north as the Michigan Central railroad at any point west of defendant's track within a distance of about twenty feet? Ans.: Yes.

"14. If the plaintiff had looked northerly in the direction of the approaching train before entering upon the track, could he not have seen it? Ans.: Yes.

"15. From a point about twenty feet west of defendant's railroad at State street, and from said point up to the track, could he not have heard the approaching train if he had listened? Ans.: Yes.

"16. Was not the plaintiff injured by defendant's train at a point about 130 feet south of the north line of State street? Ans.: No.

"17. Had the use of the gates at State street crossing been abandoned for about a week before the date of plaintiff's injury? Ans.: Yes.

"18. Were the gates when used in the night-time before the date of plaintiff's injury equipped with lanterns attached thereto? Ans.: Yes.

"19. Did the plaintiff know that prior to the date of his injury the gates, when operated at night, had lanterns attached thereto? Ans.: Yes.

"20. On the night that plaintiff was injured, did he not know before he reached the same that the gates were without lanterns attached thereto? Ans.: Yes.

"21. When plaintiff saw that the gates were up and without lanterns, did he not undertake to ascertain for himself, before going upon defendant's track, whether there was any train approaching? Ans.: Yes.

"22. Did the plaintiff himself see any train passing over the Chicago and Erie railroad track northward across State street before he entered upon defendant's track? Ans.: No.

"23. Had not the train passed northward across State street over the Chicago and Erie railroad before the plaintiff reached the defendant's track? Ans.: Yes.

"24. If you find that the Chicago and Erie train had not passed over State street, then did not plaintiff know, before reaching or passing such gates, that they were not closed or operated for said train? Ans.: Yes.

"25. At what rate of speed per mile was plaintiff walking from a point about twenty feet west of defendant's track until he entered upon the same? Ans.: Four miles an hour.

"26. Was not the only noise which plaintiff heard while approaching defendant's track, the escape of steam from an engine which was standing out of his sight at or near the Chicago and Erie railroad depot? Ans.: Yes.

"27. From a point about twenty feet west of defendant's track, did the plaintiff again look to the northward, in the direction of the approaching train, until he entered upon defendant's track? Ans.: No."

One averment is that appellant neglected to display any headlight upon its engine. To this the jury say: "It was equipped with a good headlight," and it "was burning brightly when it approached State street at the time plaintiff was injured."

Another averment is that appellant failed to ring any bell, and the jury say: "The engine bell was being

rung on defendant's engine as it approached State street at the time plaintiff was injured."

Another allegation is that it failed to make any noise to warn the appellee of the approach of the train, and the jury say : "The noise and rumble of the train could be heard north from State street for a distance of twenty rods."

Another averment is that appellant failed to lower the gate, and that appellee, seeing it open, relied on this as an assurance that no train was approaching, and the jury say : "The use of the gates at State street crossing had been abandoned for about a week before the date of plaintiff's injury."

The jury say : "The gates when used in the night-time before the date of the plaintiff's injury, were equipped with lanterns attached thereto ; that the plaintiff knew that prior to the date of his injury the gates, when operated at night, had lanterns attached thereto ; that on the night that plaintiff was injured he knew before he reached the same that the gates were without lanterns attached thereto," and "when plaintiff saw the gates were up, and without lanterns, he undertook to ascertain for himself, before going upon defendant's track, whether there was any train approaching."

It is alleged that appellant's train was running at the rate of forty miles per hour, and the jury say it was running at the rate of sixteen miles per hour.

Conceding that, under the allegations of the complaint, in the light of the general verdict and the answers of the jury to interrogatories, the appellant must be held guilty of at least one act of negligence, as the proximate cause of the injury, does it appear, under the facts found, as a matter of law, that appellee was guilty of contributory negligence?

It is settled by the special findings of fact, that appellee could have seen the approaching train as far north

as the Michigan Central crossing, 312 feet, from a point twenty feet from the track, and that from this point (twenty feet distant from the track) up to the track there was no obstruction to his view in the direction of the approaching engine and train. It is also settled that appellee did not look in that direction while walking a distance of twenty feet next to and approaching the track and not until he entered upon the track. He was walking at the rate of four miles per hour. The train was running at the rate of sixteen miles per hour. When appellee was twenty feet west of the track the engine was eighty feet north of the street.

Here, therefore, is a case of undisputed fact, showing that appellee, while walking up to the track and for a distance of twenty feet in approaching thereto, had a clear and unobstructed view of the track in the direction of the train for a distance of 312 feet, and *could have seen the approaching train* if he had *looked* at any point of observation within the twenty feet for the distance of 312 feet, and also for the whole distance of twenty feet in making his approach to the track he could have heard the train if he had listened.

It is clearly found that after appellee came within twenty feet of the railroad track, and in view of it northward, he did not look in that direction. The only way appellee could "ascertain for himself before going upon the defendant's track whether there was any train approaching" was by looking or listening. The only fair and reasonable construction of the answers to the interrogatories is that appellee neither looked nor listened for an approaching train from the north after he came within twenty feet of the track and in view thereof to the northward from the street. In this connection it is proper to say that the theory of the counsel for appellee is that in walking east on the sidewalk along the

north side of the street he was behind buildings until he reached a point twenty-five feet west from appellant's track.   The question, therefore, is, where a foot passenger, an adult in the full possession of all his faculties, along a public street, and for a distance of at least twenty feet along his approach to the track, had a clear and unobstructed view of a railroad track for a long distance, at least 312 feet, in the direction of an approaching train, is bound, under the circumstances disclosed in this case, to look and listen for a train, and, if he neglects to do so, whether, as a matter of law, he will be guilty of negligence.   Appellee was not required to anticipate that appellant would be guilty of any act of negligence that might result in his injury.   It was his duty, however, in the exercise of ordinary care and caution, after he came in view of the track, and before attempting to cross it, to look up and down the track for approaching trains.   The material facts in regard to the care and caution exercised by appellee on this occasion are undisputed, and the conclusion to be drawn therefrom on the question of contributory negligence is undisputable.   It is certain he did not look or listen to the north after he came within twenty feet of the track. If at any time after reaching the point within twenty feet of the track, where he had an unobstructed view of the track to the northward, appellee had looked in that direction and no train was then in sight, he would have had the right to presume that if any train should approach the speed would not exceed the rate prescribed in the ordinance, and if he knew that he could cross the track in safety before a train running at the speed fixed by the ordinance could reach him at the point where he attempted to cross, the court would not adjudge him guilty of negligence because he was struck by a train

moving nearly three times as fast as the speed fixed by the ordinance.    But no such case is here presented.

Counsel for appellee contend it may have been proven that when appellee came to the point twenty feet west of the track where he could see along the track to the north a distance of 312 feet, he stopped and looked north and listened for signals and noise of a train, but saw and heard nothing.    If he did stop at a point twenty or twenty-five feet west of the track he certainly saw and heard the approaching train if the engine was then within 312 feet of the street, if he looked in that direction.    If the engine was not in sight he could have walked at least seventy-eight feet east while the train was running south 312 feet, which would have taken him thirty or forty feet east of the track before the engine reached the point at which he was injured. In other words, if the train was not in sight when he reached the point twenty feet west of the track he had ample time to cross the track at the speed he was walking before the train could, at the speed of sixteen miles an hour, reach the point where he was injured.    On the other hand, if the train was in sight when he was twenty feet west of the track he saw and heard it if he at that point looked and listened in that direction.    The law does not fix any arbitrary rule as to the distance from the railroad track at which the traveler must look and listen.    It is his duty, however, in approaching a railroad track to look both ways—up and down the track—but he can only look in one direction at a time. If he exercises ordinary care under the circumstances of a given case in looking and listening for approaching trains before he enters upon the track, he is not guilty of contributory negligence, although he may not look and listen in the direction from which the train is approaching at the right time to see or hear it, but where

he has ample opportunity and wholly fails to look or listen in one direction at any time after he reaches a point where he could see or hear the train he is guilty of contributory negligence in stepping on the track in front of the engine without looking or listening in that direction, where he has not been misled by the company, and is relying on his own observation to ascertain for himself whether there is an approaching train from either direction.

In this case when the train was 312 feet north of the place of the accident the appellee was about seventy-five feet from the track, and when appellee was twenty-five feet west of this point the train was about one hundred feet north of the street. If it is true, as asserted by counsel for appellee, that the speed of the train was much greater when 400 feet north of the street, and that it was being slackened so as to bring the train to a full stop at the station, just below the street, this fact would not change our conclusion, except at the relative distances of the train and the appellee from the point at which the accident occurred during the time he might have seen or heard the train. If the rate of speed of the train was reduced within the distance indicated from fifty miles per hour to sixteen miles per hour at the crossing, yet the inference is irresistible that if appellee looked north, at any time after he came in view of the track north, 312 feet, he must have seen the train. If he saw it and attempted to cross in front of the train he was guilty of negligence. If he did not look in that direction at any time after he reached a point where he had an unobstructed view of the track, he was, under the circumstances, guilty of negligence.

Our conclusion is not in conflict with the decision in *Cleveland, etc., R. W. Co.* v. *Harrington*, 131 Ind. 426. See *Cincinnati, etc., R. W. Co.* v. *Grames*, 136 Ind. 39.

We are of the opinion that there is a material conflict between the answers to the interrogatories and the general verdict appearing upon the face of the record, which no conceivable evidence admissible under the issues could reconcile. *Indianapolis Union R. W. Co.* v. *Ott*, 11 Ind. App. 564.

The judgment is reversed, with instruction to sustain appellant's motion for judgment in its favor on the answers of the jury to the interrogatories, notwithstanding the general verdict.