## ZELLER, McCLELLAN & CO. v. WRIGHT.

[No. 6,295.  Filed March 13, 1908.]

1. TRIAL.—*Verdict.—General.—Special.*—Answers to interrogatories to the jury, in order to control the general verdict in a personal injury case, must completely negative every act of negligence alleged in the complaint. p. 405.

2. MASTER AND SERVANT.—*Incompetent Servants.—Negligence of.— Evidence Required.*—The master is liable for the acts of a known incompetent servant only when such servant's negligent conduct contributes proximately to plaintiff's injuries. p. 405.

3. SAME.—*Mines.—Engineers.—Stopping Elevators.*—The prompt stopping of a descending elevator in a mine shaft, by the engineer, in pursuance of a signal from the mining boss does not constitute negligence, though injury results to a servant on such elevator. p. 406.

4. TRIAL.—*Verdict.—General.—Special.—Conflict.*—Conflicting answers to interrogatories to the jury nullify one another. p. 407.

5. SAME. — *Verdict. — General. — Special. — Facts. — Inferences.*— Where the facts found in answers to interrogatories to the jury are such that diverse inferences might reasonably be drawn therefrom, it is for the jury to draw such inferences also; and they must be stated in the answers in order to control the general verdict, no inferences being drawn as against the general verdict. p. 407.

From Clay Circuit Court; *Presley O. Colliver,* Judge.

Action by Limus Wright against Zeller, McClellan & Co. From a judgment for plaintiff, defendant appeals. *Reversed.*

*Elmer E. Stevenson* and *Edward H. Knight,* for appellant.

*M. C. Hamill, John Hickey* and *George A. Knight,* for appellee.

ROBY, C. J.—Action by appellee; trial by jury; verdict against appellant, with answers to 100 interrogatories; motion for judgment on said answers, notwithstanding the general verdict, overruled, and exceptions reserved; judgment upon general verdict for $1,000.

The sole assignment of error is that the court erred in overruling appellant's motion for judgment notwithstanding the general verdict.

The complaint is in two paragraphs. The issue was made by a general denial. The negligence charged in the first paragraph is that appellant, a corporation operating a coal mine in this State, employing more than ten men therein, and having thereat a shaft in which cages were lowered and raised by means of a cable, wound and unwound upon a windlass by the power of a stationary engine, had in its employ one Schrepferman, whose duties consisted of the management and control of said engine by which said cages were raised and lowered in said shaft; that he was incompetent and unfit to manage and control said engine and cages; that defendant knew of such incompetency and unfitness for a long time prior to May 5, 1905, and with such knowledge negligently retained and kept him in said service. That on said day appellee entered one of said cages to be carried to his work of mining coal in said mine, and that said Schrepferman, by reason of his incompetency and unfitness, negligently allowed said cage to descend with great and unnecessary speed; that when the same had descended twenty feet he negligently, unnecessarily and improperly stopped said cage, thereby wrenching and straining appellee's muscles, etc.

The second paragraph makes the additional charges that said Schrepferman allowed persons to converse and interfere with him and divert his attention while operating said

engine, and negligently took orders from some one not deputed by appellants to command him to stop said cage. It also contained an averment that the cage was allowed to descend at a greater rate than 600 feet per minute.

The statute forbids the employment by mine owners of any but experienced, competent and sober engineers. It also provides that the engineer shall not allow any person, except such as may be deputed for that purpose by the owner or operator, to interfere with the machine. He shall not permit any one to loiter in the engine-room, and shall hold no conversation while the engine is in motion or while his attention should be occupied with the business of moving the cage, and that when men are on the cage he shall limit the speed of his engine to a rate which will not move the cage to exceed 600 feet per minute. Acts 1905, p. 65, §10, §8578 Burns 1908.

The answers to interrogatories show that the cage did not descend at a rate in excess of 600 feet per minute. They also show that the engineer did not hold a conversation with any person on the occasion complained of, and that he did not permit any person to converse with, direct, command or interfere with him while operating the engine or cage. The rules applicable to motions for judgment on answers to interrogatories are too well known to justify restatement. The general verdict finds that the appellant kept and retained an unfit employe, and such finding is not overthrown by any of the facts specially found.

The retention of such employe is not enough to establish liability, but, in addition thereto, it must be shown that his negligence in some way contributed to the injury complained of. He might have been entirely incompetent, and yet in a particular instance act with circumspection and care, and if he so acted his unfitness would, in that instance, do no harm.

The answers to interrogatories which bear upon the con-

duct of the engineer on the occasion in question show that there were five men on the cage, six being the usual number taken down at one time. Some man on the cage gave the ordinary signal to start down when the men were on. The engineer received the signal before he started the cage, and then started it suddenly. Afterwards the mine boss signalled him to stop the cage, and in obedience thereto he did stop. It was his duty to do so, when he received the signal from the mine boss, and to do so at once. The cage went down twelve or sixteen feet before it was stopped. The engineer did not know why the order was given to stop. He did not hear from the mine boss or any one else why the cage was ordered stopped. The cage descended from twelve to eighteen inches after the engineer applied the brake and shut off the power. The engineer had never before, under similar circumstances, received an order to stop the cage. The shaft was ninety-eight feet deep. The engineer was at his engine from forty to forty-five feet from the shaft. The top of the cage might have been visible to him. If he was negligent it was in stopping the cage too quickly, as charged in the complaint. It is expressly found that he did not know why the order to stop was given and did not hear from any one why the cage was ordered stopped. Under such conditions it would be impossible to regard prompt obedience as negligence. A man might be ground to death between the cage and the wall if he did not promptly stop the cage. The only finding which in any way militates against the view that the engineer acted upon what appeared to him to be an emergency order is the finding that the signal given by the mine boss was: "Stop the cage. There are only five men on"—or words to that effect. The words used might constitute an order. The term "signal" in connection with the operation of a cage has a technical signification, a code of signals is required by statute, and the signals to be used are specified. Acts 1905, p. 65, §7, §8575

Burns 1908. To the extent, if at all, that the answers are conflicting, they nullify one another; but it seems to us that, taken together, the utmost that can be said for appellee is that the facts so set out are such as to allow of a difference of opinion among reasonable men as to the engineer's negligence, and that the jury have settled the matter against appellee by their answer to the one hundredth interrogatory, which is as follows: "Was not the act of Schrepferman, the engineer, in stopping the cage at the time complained of as quickly as he was able to do so, after receiving the signal from the mine boss to stop the cage, when considered in the light of all the circumstances surrounding him at the time, as shown by the evidence in this case, the act of an ordinarily prudent man in his situation? A. Yes." The circumstances under which the engineer acted are set out, and bring the case within the rule that where the ultimate facts are found, and are such that reasonable men of equal intelligence may honestly differ as to the inferences to be drawn from such facts, it is for the jury to determine the inferences also, and in such cases these must be stated in the verdict. *Cleveland, etc., R. Co.* v. *Hadley* (1895), 12 Ind. App. 516; *Republic Iron & Steel Co.* v. *Jones* (1904), 32 Ind. App. 189; *Citizens St. R. Co.* v. *Reed* (1898), 151 Ind. 396; *Board, etc.,* v. *Bonebreak* (1896), 146 Ind. 311; *Cincinnati, etc., R. Co.* v. *Grames* (1893), 136 Ind. 39; *Smith* v. *Wabash R. Co.* (1895), 141 Ind. 92. Nothing is inferred by the court in aid of facts specially found; but inferences by the jury, where the facts in the absence thereof are uncertain, may become ultimate essential facts. The finding is not an unsupported conclusion, as in *Chicago, etc., R. Co.* v. *Burger* (1890), 124 Ind. 275, and *Pittsburgh, etc., R. Co.* v. *Spencer* (1884), 98 Ind. 186; nor is it in conflict with the ultimate facts found, as in *Smith* v. *Wells Mfg. Co.* (1897), 148 Ind. 333, and *Wabash R. Co.* v. *Keister* (1904), 163 Ind. 609. The an-

swers to interrogatories therefore show that no negligence on the part of the engineer contributed to cause the injury complained of, and, in the absence thereof, appellee had no basis of recovery.

Judgment reversed, and cause remanded, with instructions to sustain appellant's motion for judgment.