# BERNHARD *v.* THE RENSSELAER & SARATOGA RAILROAD COMPANY.

### December, 1860.

Affirming 32 *Barb.* 165; S. C., 19 *How. Pr.* 199.

In cases of negligence, where there are inferences to be drawn from the proof, which are not certain and incontrovertible, it is not proper to direct a verdict or nonsuit, but the question is for the jury. Thus where it is necessary to determine what a man of ordinary care and prudence would be likely to do in the emergency proven, this, involving, as it generally does, more or less of conjecture, can only be settled by a jury.*

---

* Approved on this point in Ernst *v.* Hudson River R. R. Co., 35 *N. Y.* 9; S. C., 3 *Abb. Pr. N. S.* 82. Followed also in Burke *v.* Broadway & Seventh-avenue R. R. Co., 49 *Barb.* 529; Lamb *v.* Camden & Amboy R. R. Co., 2 *Daly,* 454 (reversed on another point in 46 *N. Y.* 271); Kenny *v.* First National Bank of Albany, 50 *Barb.* 112.

An error of judgment, in stepping upon a railroad track, in an emergency, if the proof is not clear as to the elements of time and space on which such judgment was based, should not be held negligence as matter of law, but the question should be left to the jury.[*]

Even where it is apparent from the evidence that the collision was not caused by the negligence of defendants, yet if the evidence is conflicting on the question whether the injury was not augmented by their negligence, a verdict for plaintiff should not be set aside..

Betsy Bernhard and Ferdinand Wiel, administratrix and administrator of Gustavus Bernhard, deceased, sued the defendants, in the supreme court, to recover damages for negligently causing the intestate's death, by running an engine against him, in Schenectady, in 1854. The only facts in issue were whether defendant's servants were guilty of negligence, and whether the negligence of the deceased contributed to cause the injury.

The circumstances of the casualty, as presented by both parties on this appeal, were that the deceased arrived in Schenectady by the Albany train, and proceeded along the depot platform between the Central Railroad track and the defendants' track, on his way to his hotel, followed by West, the hotel porter, when, as he reached the walk at the street crossing, his hat blew off, and was driven upon defendant's track, just as one of their engines, under the control of one Anderson, was about to pass. He ran in pursuit of his hat, and on the track was struck by the cow-catcher, and a wheel of the engine passed over his ankle, causing the injury of which he died. The place was in the heart of the city; and a military display was just passing, and there was considerable confusion, as well as a high wind. The engine was moving at the rate of about two miles an hour. Other details appear in the opinion.

The jury found a verdict of four thousand dollars, for plaintiffs. A motion for a new trial was granted at special term. Reported in 18 *How. Pr.* 427.

*The supreme court,* at general term, reversed the order, on the ground that, with due regard to the fact that the deceased was a stranger, the evidence being contradictory as to the negligence of each party, the case was a proper one to submit to

---

[*] See Mentz *v.* Second-ave R. R. Co., reported in this series.

the jury. Reported in 32 *Barb.* 165; S. C., 19 *How. Pr.* 199.

Defendants appealed to this court.

*W. A. Beach,* for defendants, appellants,—Cited Brand *v.* Schenectady & Troy R. R. Co., 8 *Barb.* 368; Haring *v.* N. Y. & Eric R. R. Co., 13 *Id.* 9; Brooks *v.* Buffalo, &c. R. R. Co.,* 25 *Id.* 600; Dascomb *v.* Buffalo & State Line R. R. Co., 27 *Id.* 221; Mackey *v.* N. Y. R. R. Co., *Id.* 528; Johnson *v.* Hudson River R. R. Co., 20 *N. Y.* 65; Steves *v.* Oswego, &c. R. R. Co., 18 *Id.* 422.

*L. Tremain,* for plaintiffs, respondents,—Cited 6 *Cow.* 484; 2 *Wend.* 561; 7 *Id.* 377; 1 *Grah. & W. on New Tr.*; Oldfield *v.* N. Y. & Harlem R. R. Co., 14 *N. Y.* 310; *Jones on Bailm.* 21, 22; 19 *Conn.* 566; 20 *N. Y.* 76; Kelsey *v.* Barney, 12 *N. Y.* (2 *Kern.*) 429; Caldwell *v.* Murphy, 1 *Duer,* 233; Bowen *v.* N. Y. Central R. R. Co., 18 *N. Y.* 408; *Story on Bailm.* §§ 11, 601; 13 *Pet.* 181–193, 381; 16 *How. U. S.* 469; Ireland *v.* Oswego &c. R. R. Co., 13 *N. Y.* (3 *Kern.*) 526, 533; Bradley *v.* Boston & Me. R. R. Co., 2 *Cush.* 539; Labar *v.* Koplin, 4 *Comst.* 546 ; Reeves *v.* Delaware, &c. Co., 30 *Penn.* 454; *Angell,* §§ 7, 16, 27, 51, 184; 15 *N. Y.* 380; 2 *Am. Railw. Cas.* 382; 13 *Barb.* 9; 25 *Id.* 600; 27 *Id.* 221, 528; 4 *N. Y.* (4 *Comst.*) 349; 18 *N. Y.* 248.

S. L. SELDEN, J.—The only questions in this case arise upon the motion for nonsuit.

When the motion was first made, at the close of the evidence, on the part of the plaintiff, it is clear that a case had been made which the judge was bound to submit to the jury. Up to that time there was no proof that the engine bell had been rung at all. On the contrary, the only witnesses who had spoken on that subject, viz: Sherman and West, had both testified that they heard no bell. For aught that appeared, therefore, the deceased had gone upon the track for a legitimate purpose, without any notice whatever of the approach of the engine, which, from the slow rate at which it was moving,

---

* See the decision in this case reported in this series.

would hardly of itself have attracted attention amid the noise and confusion proceeding at the time. But the case was very materially changed by the evidence subsequently adduced by the defendants, and the motion having been renewed after this evidence was given, if, upon the whole case, the plaintiff should have been nonsuited, the judgment must be reversed.

It is insisted, 1st. That there was no evidence of negligence on the part of the defendants to be submitted to the jury; and 2nd. That the proof of negligence on the part of the deceased was so clear and conclusive, that the plaintiff should have been nonsuited on that ground.

I shall consider the last of these propositions first.

In actions for injuries resulting from negligence, if it appears from the evidence that the plaintiff, or, in cases like this, the deceased, was guilty of any negligence which contributed to the injury, there can be no recovery; and although, as a general rule, questions of negligence belong exclusively to the jury, cases may no doubt arise in which the proof of negligence would be so clear and irresistible that the court would be justified in assuming, without submitting the question to the jury, that negligence was established. At the same time it is obvious, considering the nature of the question, that such instances must be rare. If there is any conflict in the evidence going to establish any of the circumstances upon which the question depends, it must be left to the jury. If there are inferences to be drawn from the proof, which are not certain and incontrovertible, they are for the jury. If it is necessary to determine, as in most cases it is, what a man of ordinary care and prudence would be likely to do under the circumstances proved—this involving, as it generally must, more or less of conjecture—can only be settled by a jury.

It is not easy to suppose a case in which the court would be warranted in holding, as matter of law, that negligence was proved. If, however, an individual in a railroad depot, where engines are constantly moving about, should, without any ostensible reason or apparent object, place himself so near one of the tracks that an engine could not pass without hitting him, and while there, should be knocked down and injured by an engine, with its bell constantly ringing as it approached, I

am inclined to think that it would be the duty of the court to hold the party injured guilty of negligence, without taking the opinion of a jury.

In the present case the deceased was not upon the track without a legitimate object, but went there upon a sudden emergency. He judged wrong as to having time to secure his hat before the locomotive would reach him, and the question is, whether this error betrayed a want of ordinary prudence. In determining this question, the time, the occasion, and all the surrounding circumstances are to be taken into consideration. Men of prudence do not judge with the same accuracy amid noise and bustle and confusion, as at other times. Here, to all the ordinary stir of an extensive railroad depot, was added the disturbance produced by a violent wind and the simultaneous movement of a company of soldiers. Strangers suddenly set down in such a place cannot be expected to act with the same precision of judgment as under more familiar and less disturbing circumstances. It is for this reason that, while officers and employees of a railroad company, who are upon their own ground, engaged in their customary occupations, with an experience and familiarity with the business that enables them accurately to appreciate every danger, are held, in such places, to the exercise of the strictest vigilance and the most exact judgment, the conduct of travelers upon the road is more liberally regarded.

Can it be said, then, in view of these obvious considerations, that the court was bound to hold the deceased guilty, as a conclusion of law, of a want of ordinary care, without even submitting the question to a jury? I think not. The deceased must have supposed that he had time to seize his hat, and get off of the track before the engine would reach him. The result shows that in this he erred; but the proof is not specific and clear as to the elements of time and space upon which his judgment was based. For the court, therefore, to hold that his mistake was inexcusable, would be to establish the principle that in every such case error in judgment is *per se* culpable negligence. This, I think, would hardly do. Whether, in such a case, the error was excusable or not can only be settled by a jury, in view of all the circumstances of the case

so far as they are disclosed, and especially when, as in the present instance, the deficiencies in the proof leave the case open to many uncertain inferences. The judge was right in submitting this case, so far as the point under consideration is concerned, to the jury.

The next and only remaining question is, whether the plaintiff should have been nonsuited on the ground that there was no evidence of negligence on the part of the defendants to be submitted to a jury.

To have omitted to ring the bell would have been negligence, and there is some little conflict in the evidence on this subject—two witnesses having sworn that they heard no bell. But there is such a preponderance of evidence that the bell was rung, that the jury would not have been warranted in finding that it was not; and had they done so, it would have been the duty of the supreme court to set aside their verdict as contrary to the evidence.

Again: it would be impossible for the jury, upon the evidence given, to say that the engineer was negligent in not stopping the engine before it came in contact with the deceased; because, although the proof is not very clear and definite as to the distance between the deceased and the engine when the former stepped upon the track, it was evidently very short. There was nothing, therefore, upon either of these points to be submitted to a jury.

This, however, is not decisive of the case. If the engineer could not avoid all collision with the deceased, it was nevertheless his duty to cause the injury from that collision to be as slight as possible. If the engine could have been stopped in time to save the life of the deceased, the defendants would be liable in this action, notwithstanding the impossibility of entirely preventing the accident. It is precisely here that the charge of negligence against the defendants rests, if it has any foundation at all.

The evidence bearing upon this point is decidedly conflicting. If we take the testimony of the defendants' witnesses, White and Beach alone, it would appear that the deceased was upon the track in front of the engine, and, upon being struck by the cow-catcher, was immediately thrown down and run

over by the wheel of the engine; that, in fact, no appreciable time intervened between the first collision and the fatal injury. But the testimony of the witness, West, the porter of the Temperance House, presents the matter in a very different light. Upon his direct examination, speaking of the deceased, he said, " He was close up to the track, and I saw him entangled with the engine; within a minute or two after I saw him standing still." Upon his cross-examination he said : " I could not see the cow-catcher hit him from where I stood; the first movement Bernhard made after the cow-catcher struck him, he stepped a step north and east; the next thing was, he stopped, and could not move; he was stepping alongside of the engine; he was then on the side of the engine—on the west side, and north of the front end. of cow-catcher; the track there run about north and south; I could not see then, whether the cow-catcher was then in contact with him; I think I saw some part of the engine in contact with some part of his person; I think it rubbed him a little back of the cow-catcher, of the rear part of it; he was a little back of the cow-catcher, three or four feet back from the rear."

Assuming the honesty of this witness, these details show a very different case from that to be drawn from the more brief and general statement of the other witnesses. The inference from this testimony is, that instead of being struck and instantly thrown down by the cow-catcher, Bernhard was first caught probably by some part of his clothing; that he endeavoured to extricate himself, but without success, and that he kept his feet, and continued to struggle until he had got past the cow-catcher, and opposite the engine. The testimony admits of no other interpretation consistently with the integrity of this witness. If this account is correct, it clearly establishes the charge of negligence. It proves that the person in charge of the engine could not have had his eyes upon the track before him at the moment of the first contact; because it is shown that the engine was moving so slowly that it could be almost instantly stopped. If, then, the engineer had seen the deceased caught by the cow-catcher, he could easily have stopped before all that is related by the witness, West, had occurred; and thus the life of Bernhard would have been saved.

This view of the case receives some confirmation from the testimony of Anderson himself, who had charge of the engine. He says: "I did not see Bernhard when the engine first struck him; Bernhard was about down on the walk when I first saw him." If this witness permitted his attention to be diverted from the track upon which he was moving to the military company or other objects, in such a place and at such a time, he was inexcusable, and the company is liable for the consequences. Whether this is really so or not, is of no importance here. It is sufficient that there was some evidence tending to establish it. The duty of reconciling this evidence with the other proof in this case, or of determining the credit to which the witnesses were respectively entitled, could only be performed by the jury, and the judge was therefore right in submitting the case to them.

I have said nothing in regard to the fact, that the engine was left, at the time of the accident, in charge of the fireman, although it is at least doubtful whether that alone would not have made it necessary to submit the case to the jury upon the question of negligence on the part of the defendants, as the incompetency of the fireman to manage the engine, unless incontrovertibly established, must have been passed upon by the jury.

It follows from these views, that the judgment of the supreme court should be affirmed.