KATE FEENEY, Respondent, *v.* THE LONG ISLAND RAILROAD COMPANY, Appellant.

Where a railroad corporation has, in compliance with an ordinance lawfully enacted by a municipal corporation, placed safety-gates at a street crossing, it is its duty to exercise due care in operating them so as to protect travelers on the highway, not only from the danger of being run over by the cars, but against injury from the gates themselves.

If, on reaching the crossing, a traveler finds the gates raised and motionless, he is at liberty to go on; and if it becomes necessary to lower the gates while he is passing between them, it should be done with due regard to his safety.

Plaintiff was walking along a street which crossed, at grade, the tracks of defendant's road, in the city of B. In compliance with an ordinance of the common council, authorized by statute, defendant had erected safety-gates on each side of its tracks at said crossing. It was raining hard and plaintiff had an umbrella up. As she approached the crossing she looked and saw that the gates were up and stationary. She passed the first gate, crossed the tracks, and as she was passing under the second gate, it was lowered by the gateman more rapidly than usual, and struck and injured her. In an action to recover damages, wherein these facts appeared, *held*, that the evidence authorized the jury in finding that defendant omitted to observe that degree of care required of it, and that owing to the omission plaintiff was injured; that the omission on her part to look when passing under the second gate to see whether it was coming down was not, as matter of law, negligence; but that it was a question of fact for the jury.

A witness, called for the defendant, testified that he was a practicing physician, and that plaintiff, the day after the accident, called upon and consulted him. He was then asked if he conversed with plaintiff about her injuries and if he made an examination of her. This was objected to and excluded, as calling for a privileged communication. *Held*, no error.

It appeared that, at the time of the trial, plaintiff was still suffering from the effects of the accident, and that some time would be required to effect a cure. The nature and extent of the medical services were also proved, but no evidence was given as to the value thereof. The court charged that the measure of damages was compensation for the injuries received by plaintiff, including "the expenses of her recovery as regards the past and future." *Held*, no error.

In such cases, where evidence has been given tending to show that the person injured will probably experience further pain, or will require further medical attendance as the result of the injury, the jury, in assessing damages, may take into account the pain that may be reasonably expected and the expense of the medical attention needed in the future.

(Submitted October 11, 1889; decided October 22, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 14, 1886, which affirmed a judgment in favor of plaintiff, entered upon a verdict, and affirmed an order denying a motion for a new trial.

This action was brought to recover damages for personal injuries alleged to have been caused by defendant's negligence.

The material facts are stated in the opinion.

*Edward E. Sprague* for appellant. Defendant was entitled to show that plaintiff conversed with and was examined by Dr. Terhune. (*People* v. *Schuyler*, 106 N. Y. 304; *Edington* v. *Ætna Life Ins. Co.*, 77 id. 569.) The questions did not call for the disclosure of any information. Their object was to show that a conversation was had and an examination made. This was proper. (*Babcock* v. *People*, 15 Hun, 347.) The court erred in charging the jury that plaintiff was entitled to recover for expense of recovery. (*Vertz* v. *Singer Co.*, 35 Hun, 116.) Where the loss is pecuniary, and is present and actual, and can be measured, but no evidence is given showing its extent, or from which it can be inferred, the jury

· can award nominal damages only. (*Leeds* v. *G. L. Co.*, 90 N. Y. 29; *Staal* v. *G. S. & N. R. R. Co.*, 107 id. 625; *Crawford* v. *D., L. & W. R. R. Co.*, 23 J. & S. 255; *Mosher* v. *Russell*, 44 Hun, 15; *Strohm* v. *N. Y., L. E. & W. R. R. Co.*, 96 N. Y. 305; *Dawson* v. *City of Troy*, 49 Hun, 332.)

*Charles J. Patterson* for respondent. The practice at the crossing was not to lower the gates while anyone was within the track inclosure. This, under the gateman's evidence, was defendant's duty, and plaintiff had a right to assume they would not be negligent. (*Newson* v. *N. Y. C. R. R. Co.*, 29 N. Y. 383.) Whether an injury is curable, and in what time a cure may be effected, are proper subjects for medical opinion. (*Matteson* v. *N. Y. C. R. R. Co.*, 35 N. Y. 487.) The day after the injury plaintiff having consulted Dr. Terhune, his conversations with and examinations of her had in that consultation were privileged communications. (Code, § 834; *Renihan* v. *Denin*, 103 N. Y. 573.) Plaintiff had not waived her privilege to exclude Dr. Terhune by calling her other physician. (*Hope* v. *T. & L. R. R. Co.*, 40 Hun, 438; 110 N. Y. 643.)

VANN, J. A public street in the city of Brooklyn, known as Utica avenue, crosses at grade the tracks of a steam railroad operated by the defendant in Atlantic avenue, another public street of said city. At the point of intersection there are safety-gates erected and operated by the defendant, pursuant to an ordinance of the city based upon an act of the legislature, authorizing the common council to prescribe regulations with regard to the public safety. The gates on both sides of the track are raised and lowered at the same time and by the same movement of a crank turned by the gateman. On the 8th of November, 1885, at half past seven in the evening, the plaintiff was walking southerly on Utica avenue, and as it was raining hard had raised her umbrella. As she approached · said crossing the gates were up and stationary, but after she had passed under the north gate the gateman lowered the

gates more rapidly than usual, and as she was passing under the south gate it fell upon her head and injured her. As she passed over the track she did not look to see whether the second gate was coming down or not. A train was in sight, but it had not reached the station above.

Although the gateman was sworn, it did not appear that any warning or signal was given that the gates were being lowered, or that there was any lantern or other device to attract attention to them. He testified, however, that he kept his eyes upon the gates, as they were coming down, so as to avoid hitting anyone, and that is was his duty to do so, but that he did not see the plaintiff.

The evidence warranted the jury in finding that the defendant omitted to observe that degee of care required by the circumstances, and that owing to such omission the plaintiff was injured. It was the duty of the defendant to use due care in operating the gates so as to protect persons. traveling upon the public highway, not only from being run over by the cars, but also against injury from the gates themselves. If on reaching a crossing protected by safety-gates a person finds them raised and motionless, he is at liberty to go on, and if it becomes necessary to lower the gates while he is passing between them, it should be done with all the care demanded by the peculiar situation and with due regard to the safety of human life.

The trial court, therefore, properly charged the jury that if the gateman, by the exercise of due care on the occasion of this accident, could have operated the gates without injury to the plaintiff, he was bound to do so, and that negligence on his part in this regard was the negligence of the defendant. The defendant claimed that the plaintiff was guilty of contributory negligence, and in instructing the jury upon this subject the trial judge said : " There is a duty also resting upon the plaintiff. She is on the highway, but crossing a dangerous. place. She is bound to look not only to prevent injury from the trains, but also from these gates. If, by proper precaution on her own part, she could have avoided injury, she was.

bound to observe it.   If she did not she cannot recover."   At the request of appellant's counsel he further charged that "the plaintiff was bound to exercise due caution to ascertain whether a train was approaching in order to inform herself as to whether the gate was likely to be put down while she was in the act of crossing the track."   When asked to charge "that she was bound in law to look before passing under the second gate to see whether it was coming down," he said, "I will leave it to the jury to say whether, under all the circumstances, she exercised ordinary care."   The defendant excepted, whereupon the trial judge said to the jury : "She was bound to exercise the care you expect from an ordinarily careful, prudent person in going under the first and second gate.   It is for the jury to say whether she did it."

The degree of care required of a person approaching a dangerous place should be proportioned to the degree of danger, known or apparent, to be encountered, (*Weber* v. *N. Y. C. & H. R. R. R. Co.*, 58 N. Y. 451, 456.)   In crossing the tracks of a railroad operated by steam, more care is required than in crossing a railroad operated by horses, because the cars upon the former move more rapidly and cannot be so readily stopped as those upon the latter.   (*Barker* v. *Savage*, 45 N. Y. 193.)   There is still less danger in passing under safety-gates, as they need not be lowered rapidly and should at all times be under the control of the gateman. If he does his duty there is little or no danger.   The plaintiff had the right to assume that the gateman would not be negligent on the occasion in question (*Newson* v. *N. Y. Central R. R. Co.*, 29 N. Y. 383), although she was not, on this account, relieved from the necessity of exercising that degree of care that would have been used by a person of ordinary prudence under the same circumstances.   The law does not measure that degree of care, but leaves it to the judgment of the jury when there is evidence upon the subject for them to consider. The plaintiff, according to her testimony, exercised some care. On reaching the gates she looked, and, seeing that it was apparently safe, went on.   She was traveling upon a public street, in

the midst of a populous city, on a dark, rainy night, with her umbrella up, and was between the gates before the gateman began to lower them. No warning was given. We think that it should not be held, *as matter of law*, according to the form of the request not charged, that she was bound to look before passing under the second gate to see whether it was coming down, but that it was a question of fact for the jury to decide, whether, under all the circumstances, she was guilty of negligence which contributed to the injury that she received. (*McGovern* v. *N. Y. C. & H. R. R. R. Co.*, 67 N. Y. 417; *Beisiegel* v. *N. Y. C. &. H. R. R. R. Co.*, 34 id. 622; *Bernhard* v. *Rensselaer & Saratoga R. R. Co.*, 1 Abb. Ct. App. Dec. 131; Shearman & Redfield's Neg. §§ 86, 87.)

Upon this appeal no question relating to the negligence of either party has been formally discussed by the appellant, but the attention of its learned counsel was confined to two exceptions, the first of which was taken under the following circumstances: A witness sworn for the defendant testified that he was a practicing physician, and that on the day after the accident the plaintiff called upon and consulted him. He was then asked by defendant's counsel if he conversed with her about her injuries, and if he made an examination of her. The court sustained the objection made in behalf of the plaintiff, that these questions called for a privileged communication. It is urged that the objection was premature because it did not appear that the information called for was such as was necessary to enable the witness to act in a professional capacity. The language of the court in *Edington* v. *Mutual Life Insurance Company* (67 N. Y. 185, 194), may be repeated in answer to this position. " The point made that there was no evidence that the information asked for was essential to enable the physician to prescribe is not well taken, as it must be assumed from the relationship existing that the information would not have been imparted except for the purpose of aiding the physician in prescribing for the patient. Aside, however, from this, the statute in question being remedial, should receive a liberal interpretation, and not be restricted

by any technical rule." And in *Grattan* v. *Metroplitan Life Insurance Company* (80 N. Y. 281, 297), the court said : "Nor was it necessary for the plaintiff to show in the first instance, by formal proof, that the information was necessary to enable the witness to prescribe. Such, under the circumstances of this case, is the inevitable inference."

The fact that the plaintiff consulted the physician on the occasion to which the inquiries related, when considered in connection with the nature of the questions themselves, is sufficient, in the absence of other proof, to bring them within the prohibition of the statute. (Code Civ. Pro. § 834; *Renihan* v. *Dennin*, 103 N. Y. 573.)

The other exception that we are asked to consider was taken to the remark of the court when charging the jury that the measure of damages was compensation for the injures received by the plaintiff, including "the expenses of her recovery as regards the past and future."

It appeared that the plaintiff was treated by her physician four times at her house and fifteen or sixteen times at his office, and that she had not recovered at the time of the trial, but was still suffering from the effects of the accident. It also appeared that some time would be required to effect a cure. No proof, however, was given as to the value of the doctor's services, but if there had been it would have been advisory only, and the jury would not have been bound by it. The judgment of an expert cannot be substituted for that of the jurors. The nature and extent of the medicial services having been proved, it was competent for the jury to consider the evidence in assessing the damages, and to award, at least, a nominal sum for professional treatment. The counsel for the defendant, in excepting to this portion of the charge, said, "there is no proof," whereupon the trial judge remarked, "she had the doctor fifteen times," and there the subject was dropped. If counsel had requested a specific instruction to the jury that as there was no proof of the value of the services, only nominal damages could be given on that account, a different question would have been presented.

It may now be regarded as settled that the jury in cases of this character may take into account the pain and suffering that may reasonably be expected in the future, provided evidence has been given tending to show that the person injured will probably experience further pain as a result of the injury. (*Filer* v. *N. Y. C. R. R. Co.*, 49 N. Y. 42; *Turner* v. *City of Newburgh*, 109 id. 301, 309; *Griswold* v. *N. Y. C. & H. R. R. R. Co.*, 44 Hun, 236; affirmed, 115 N. Y. 61.)

This is upon the principle that adequate compensation may be recovered in a single action for all the natural consequences of the negligent act. So, where it is reasonably certain that medical attention will be needed in the future, the expense thereof may be considered by the jury in assessing the damages, as it is a direct and natural result of the defendant's negligence.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.