(26 Misc. Rep. 55.)

McGILLICUDDY v. FARMERS' LOAN & TRUST CO.

(Supreme Court, Trial Term, New York County. January 10, 1899.)

1. WITNESSES—COMPETENCY—PHYSICIANS.
    Although he has not registered his license as required by Acts 1887, c. 647, as amended by Laws 1893, c. 661, a duly-licensed physician is an incompetent witness as to information obtained while attending a patient, under Code, § 834, prohibiting physicians "duly authorized to practice" from disclosing information acquired in a professional capacity.

2. SAME.
    A physician suing for services is within Code, § 834, prohibiting physicians from disclosing information acquired in a professional capacity.

3. SAME.
    Under Code, § 834, prohibiting a physician from divulging information obtained by him while attending a patient, a physician suing for services cannot show what services he rendered by another physician, who acquired his information while attending the patient professionally.

Action by Thomas J. McGillicuddy against the Farmers' Loan & Trust Company, as temporary administrator of Jane A. Dwyer, deceased, to recover for professional services rendered decedent. There was a judgment for defendant. On motion for new trial. Denied.

Thos. Gilleran and John M. Gardner, for plaintiff.
David McClure, for defendant.

McADAM, J. The plaintiff, a physician, sues the defendant to recover for professional services rendered to the decedent, Jane A. Dwyer, otherwise known as the "Duchess de Castelluccia," and to her husband, at her request, from October, 1893, to March, 1895. The bill aggregates $24,700, and contains a credit for $815. The lips of the patient being now sealed in death, the plaintiff did not offer himself as a witness (Code, § 829), but attempted to establish his claim by Dr. Cerio, who at the times referred to in the questions to which objections were sustained, attended the patient daily as her medical adviser. The plaintiff's obvious purpose was to have Dr. Cerio divulge information, respecting the services rendered by the plaintiff to the decedent, which he acquired while he and the witness prescribed for her professionally. The answers of the witness, to be at all serviceable to the plaintiff, would have to disclose the ailment with which the patient suffered, the nature of the treatment, and the value of the plaintiff's services. This would be a breach of the confidence which the statute was designed to make inviolate.

The plaintiff sought to avoid the statute by proving that, although Dr. Cerio was a duly-licensed physician, he had never registered his license, as required by Acts 1887, c. 647, as amended by Laws 1893, c. 661, and was therefore disqualified from practicing physic, and consequently not incompetent as a witness under section 834 of the Code. Wiel v. Cowles, 45 Hun, 307, is cited in support of this contention; but there the person who attended the patient, and whose testimony the appellate court held should have been received, had never been admitted to practice medicine, and consequently did not belong to the learned profession whose members are, on grounds of public policy, excluded from testifying to information acquired while holding professional relations.

Kendall v. Grey, 2 Hilt. 300, was an action for goods sold and delivered. The defendant denied the allegations of the complaint, and, by way of counterclaim, alleged that the plaintiff was indebted to him for medical services rendered. After the plaintiff had proved his case, the defendant called one Page, who had the privilege of the defendant's office in consideration of answering for him when he was absent. He had no interest in the defendant's fees or business. He knew of the plaintiff coming to Dr. Grey's office for medical treatment. He heard him say he came for an operation. The plaintiff's counsel objected to the witness being allowed to state anything which would tend to disclose the nature of plaintiff's disease, because the communication by him to the witness was of a confidential character, and made to him as a physician connected with the defendant in his office. The justice sustained the objection, and excluded every question tending to show the nature of the disease for which the plaintiff was treated. The

appellate court held this ruling erroneous, as the witness Page stood in no such relation to the patient as to warrant the exclusion of the testimony. The court below also refused to permit the patient to state anything respecting the nature of the disease. This was also held to be error, because the statute did not render the patient an incompetent witness on that subject. The relations of Dr. Cerio to the patient were of such a professional and confidential character that the case cited decides nothing relevant to the question presented here.

Van Allen v. Gordon, 83 Hun, 379, 31 N. Y. Supp. 907, was an action to recover the value of a physician's professional services, and it was there held that the interposition of an answer by the defendant, containing a general denial, did not waive the provisions of section 834 of the Code. The court said:

"We see no escape from the provisions of this section. We do not understand that the defendant had in any manner waived its provisions. He was sued, and was brought into court without his consent, and compelled to litigate a claim made against him for services rendered. It may be claimed that he was guilty of a breach of contract in refusing to pay the physician for his services, but that question can only be determined by a trial. If the physician made exorbitant charges, the defendant was not obliged to pay. And the same may be said with reference to the defendant's answer putting in issue the allegations of the complaint. Whether or not he properly interposed his defense can only be determined by the trial. It is not apparent to us that either of these acts amounted to a waiver of the statute. Had the defendant himself brought an action against the physician, alleging misconduct or malpractice, he doubtless would be deemed to have waived the statute. But we think the interposing of a general denial in an action brought against him cannot be so treated. Our attention has been called to a statement in 18 Am. & Eng. Enc. Law, 438, which is in apparent conflict with the views herein expressed. We have carefully examined the citation of authorities made thereunder, but have been unable to find any that support the statements. It is urged that, if the physician is not permitted to disclose the disease with which his patient is afflicted, he cannot show the value of his services, and that, consequently, it could not have been the intention to have the statute apply to a case like this. But we think such a result does not necessarily follow. The physician can still testify to his employment, to the number of visits made, to the examinations, prescriptions, and operations, and, if the defendant objects to his describing them, the physician may then testify as to the value. It may be that the plaintiff would be unable to corroborate the physician's testimony as to the value of the services, for the reason that he would not be permitted to disclose to other physicians the character of the services rendered; but the defendant would meet the same embarrassment when he undertook to dispute the value of such services."

It must be apparent, therefore, upon principle as well as authority, that a physician or surgeon suing for services is within section 834 of the Code, and must, to succeed, establish his case without offending its provisions.

The failure of a licensed physician to register his license may subject him to the penalties imposed by the registration act, and may perhaps deprive him of all right to recover compensation for services; but it in no manner alters the fact that he has been duly licensed to practice physic, and, therefore, excluded from disclosing information acquired in the line of professional duty. Section 834 of the Code was originally part of the Revised Statutes (2 Rev. St. p. 406, § 73), under the article which refers to the examination of witnesses and rules of evidence in certain cases, having nothing whatever to do with the question as to

who shall be permitted to practice in the state,—a subject elaborately discussed in White v. Carroll, 42 N. Y. 163. Notwithstanding the changes in the law determining who may or may not practice, the section of the Revised Statutes, as a rule of evidence, has continued, since 1830 to the present day, applicable to every person licensed as a physician, no matter what school of medicine he follows, or under what law he is permitted to practice, nor whether he has incurred penal responsibility personal to himself by the infraction of registration statutes or the like. A patient has a right to act on the presumption that every practitioner is regularly licensed. McPherson v. Cheadell, 24 Wend., at page 24; Thompson v. Sayre, 1 Denio, at page 180. Registration is a regulation which concerns only the practitioner and the state. It was not intended to infringe upon the rights of patients, and does not assume to do so.

The vital question involved here is as to the extent of the prohibition imposed by section 834 of the Code, and this has been considered in several authoritative decisions. In the leading case of Edington v. Insurance Co., 67 N. Y. 194, the court said:

"The statute in question, being remedial, should receive a liberal interpretation, and not be restricted by any technicalities. When it speaks of information, it means, not only communications received from the lips of the patient, but such knowledge as may be acquired from the patient himself, from the statements of others who may surround him at the time, or from observation of his appearance and symptoms. Even if the patient could not speak, or his mental powers were so affected that he could not accurately state the nature of his disease, the astute medical observer would readily comprehend his condition. Information thus acquired is clearly within the meaning and scope of the statute."

This case has been approved and this language quoted in many cases, particularly in Grattan v. Insurance Co., 80 N. Y. 281, where the court, at page 297, after observing that the communication to his sense of sight is within the statute as much as if it had been oral and reached his ear, and declaring that it was not necessary for the plaintiff to show in the first instance, by formal proof, that the information was necessary to enable the witness to prescribe, such, under the circumstances of the case, being the inevitable inference, quoted the language above set forth and approved of the conclusions reached, and, at page 299, it cites a Michigan case, which holds that the privilege extends to whatever, in order to enable the physician to prescribe, was disclosed to any of his senses, and which in any way was brought to his knowledge for that purpose. See, also, Feeney v. Railroad Co., 116 N. Y. 380, 22 N. E. 402; Nelson v. Village of Oneida, 156 N. Y. 219, 50 N. E. 802.

In Buffalo Loan, Trust & Safe-Deposit Co. v. Knights Templar & Masonic Mut. Aid Ass'n, 126 N. Y. 455, 27 N. E. 943, the court said:

"The statute should have a broad and liberal construction to carry out its policy. By reasonable construction it excludes a physician from giving testimony in a judicial proceeding in any form, whether by affidavit or oral examination, involving a disclosure of confidential information acquired in attending a patient, unless the seal of secrecy is removed by the patient himself."

The questions which Dr. Cerio was asked to answer, the objections to which were sustained by the court, called for a statement by him of information obtained in his professional capacity, either directly from

the patient herself, or by observation, and were clearly inadmissible. Dr. Cerio testifies that he saw the plaintiff at the house where the patient was confined, and was allowed to state the number of times he saw him there (Patten v. Association, 133 N. Y. 450, 31 N. E. 342); but all that occurred in the privacy of the sick chamber was excluded, for this the statute intended should be confidential and sacred.

In the case of Renihan v. Dennin, 103 N. Y. 573, 9 N. E. 320, it was held that where a physician who attended upon a patient requests another physician to attend with him for consultation in regard to the condition of the patient, and he does so attend, the latter physician is brought within the provisions of the Code of Civil Procedure, prohibiting a physician from disclosing information acquired in attending a patient in a professional capacity to enable him to act in that capacity. To bring the case within the statute, it is sufficient that the physician attended as such upon the patient, and obtained the information in that capacity. The court, at page 578, 103 N. Y., and page 322, 9 N. E., said:

"It is quite common for physicians to be summoned by the friends of the patient, or even by strangers about him; and the statute would be robbed of much of its virtue if a physician thus called were to be excluded from its provisions because, as contended by the learned counsel for the appellant, he was not employed by the patient, nor a contract relation created between him and the patient. To bring the case within the statute, it is sufficient that the person attended as a physician upon the patient, and obtained his information in that capacity."

The statute was not passed for the pecuniary benefit of the medical fraternity, but to silence its voice, and in this manner protect those seeking medical assistance, by excluding all inquiry which may offend the sensitiveness of the living, or reflect in the slightest on the memory of the dead. It was to throw the mantle of charity over the sick and unfortunate, and at the same time elevate the medical practitioner to the high plane with the clergy and good Samaritan, leaving him to protect his fees according to professional ethics, so long as he does not infringe the humanitarian sentiment embraced in the statutory prohibition. It is a beneficent statute, clearly indicating the policy of the state. It should not be impaired, but preserved in its integrity, according to its manifest spirit and purpose.

The plaintiff's counsel announced at the trial that, under the court's interpretation of section 834 of the Code, the plaintiff could not establish his cause of action, whereupon the complaint was dismissed. As no error has been discovered, the present application, which is for a new trial, must be denied.