NORMAN GETMAN et al., as Administrators of JOHN A. SHOEMAKER, Deceased, Respondents, v. THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, Appellant.

1. CONTRIBUTORY NEGLIGENCE — MISTAKE OF JUDGMENT IN IMMINENT PERIL.   Upon the trial of an action against a railroad company for damages for the death of plaintiff's intestate occurring at one of its crossings, that deceased was in a position of imminent danger is not sufficiently established where the undisputed evidence shows that he was in good health, entirely familiar with the crossing, was driving a gentle

horse at a walk, or slow trot, and saw the train by which he was struck approaching at a speed of from forty to fifty miles an hour when it was still two hundred feet from the crossing, and when the head of his horse was within six feet of the nearest rail, there being nothing in the surroundings to confuse him, and the circumstances indicating that he first intended to jump from the wagon and then changed his mind and whipped up his horse, intending to cross in front of the train ; and a charge to the jury stating the legal principle applicable to a mistake of judgment, committed by one placed in such a position by the negligence of another, is reversible error, as it permits a finding that the deceased was free from contributory negligence, when the evidence does not.

2. BURDEN OF PROOF. The burden is upon plaintiffs, in an action to recover for the negligent killing of their intestate, to show that the latter acted with reasonable care under the circumstances.

*Getman* v. *D., L. & W. R. R. Co.,* 37 App. Div. 630, reversed.

(Argued January 18, 1900; decided February 27, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 31, 1899, affirming a judgment in favor of plaintiffs entered upon a verdict, and an order denying a motion for a new trial.

This action was brought to recover damages for the death of plaintiff's intestate, alleged to have been caused by the negligence of the defendant.

The facts, so far as material, are stated in the opinion.

*William Kernan* and *Leslie W. Kernan* for appellant. Plaintiffs' intestate was guilty of carelessness and negligence which caused the accident. This was shown by all the evidence, and there was no evidence to the contrary. The court should have so held when requested by the counsel for the defendant. ( *Wilcox* v. *R., W. & O. R. R. Co.,* 39 N. Y. 358; *Reynolds* v. *N. Y. C. & H. R. R. R. Co.,* 58 N. Y. 248; *Heaney* v. *L. I. R. R. Co.,* 112 N. Y. 122; *Cullen* v. *D. & H. C. Co.,* 113 N. Y. 667; *Rodrian* v. *N. Y., N. H. & H. R. R. Co.,* 125 N. Y. 526; *Moore* v. *N. Y. C. & H. R. R. R. Co.,* 42 N. Y. S. R. 489; *Bates* v. *N. Y. C. & H. R. R. R. Co.,* 84 Hun, 287; *Durkee* v. *D. & H. C. Co.,* 88 Hun, 471; *Du Bois* v. *N. Y. C. & H. R. R. R. Co.,* 88 Hun, 10; *Martin* v. *N. Y. C. & H. R. R. R. Co.,* 50 N. Y. S. R. 553.)

*A. B. Steele* for respondents.   The plaintiffs' intestate was not guilty of contributory negligence.   The circumstances surrounding the accident were such that that question was one of fact for the jury, and the jury found for the plaintiffs. (*Casey* v. *N. Y. C. & H. R. R. R. Co.*, 78 N. Y. 518; *Ernst* v. *Hudson River R. R. Co.*, 39 N. Y. 61; *Kissenger* v. *N. Y. & H. R. R. Co.*, 56 N. Y. 538; *Kane* v. *N. Y., N. H. & H. R. R. Co.*, 132 N. Y. 160; *Oldenburg* v. *N. Y. C. & H. R. R. R. Co.*, 124 N. Y. 414; *Palmer* v. *N. Y. C. & H. R. R. R. Co.*, 112 N. Y. 234; *Smedis* v. *B. & R. B. R. R. Co.*, 88 N. Y. 13; *Schafer* v. *Mayor, etc.*, 154 N. Y. 466; *Judson* v. *C. V. R. R. Co.*, 158 N. Y. 597; *Branch* v. *N. Y. C. & H. R. R. R. Co.*, 39 App. Div. 435; *Wieland* v. *D. & H. C. Co.*, 30 App. Div. 85.)   Plaintiffs' intestate not being guilty of contributory negligence, and being unable to discover the approach of the train until he arrived at the west side of the depot where he was in a dangerous position, he was not required to use the same accurate judgment that he would have been required to use had he not been in a dangerous place.   (*Smith* v. *N. Y. C. & H. R. R. R. Co.*, 4 App. Div. 493; *Richardson* v. *N. Y. C. R. R. Co.*, 45 N. Y. 846; *Heath* v. *G. F. R. R. Co.*, 90 Hun, 560; *Zwack* v. *N. Y., L. E. & W. R. R. Co.*, 160 N. Y. 362; *Judson* v. *V. C. R. R. Co.*, 158 N. Y. 597; *Finn* v. *D., L. & W. R. R. Co.*, 42 App. Div. 524.)

LANDON, J.   The plaintiffs' intestate, John A. Shoemaker, on the 26th day of August, 1896, at about seven o'clock in the evening, but while it was still broad daylight, in attempting to cross the single track of the defendant's main line of railroad near its station at South Columbia, Herkimer county, was struck by defendant's fast passenger train and killed.

In view of the verdict in favor of the plaintiffs and the affirmance by the Appellate Division of the judgment entered thereon, the appeal brings before us but the single question whether upon the undisputed evidence touching the intestate's action upon that occasion, it was error for the trial court to

permit the jury to find that the intestate was free from negligence contributing to his own death.

This situation is presented by the uncontradicted evidence.

The plaintiffs' intestate, Shoemaker, was a farmer, fifty-two years of age, in good health and entirely familiar with this crossing. The crossing was formed by a single track of the defendant's main line of railroad running northerly and southerly over the highway at nearly right angles. Shoemaker was seated upon a milk can in an open wagon drawn by a single horse, old and slow, which he was driving. His horse was either walking or slowly jogging along. As he was nearing the crossing the defendant's passenger train was approaching it from the north at a speed of from forty to fifty miles an hour. The defendant's passenger and freight station was also to the north of him, the end next to him being about thirty feet from his right hand. This station was 76 feet long and 20 feet wide, parallel to the main track, its front side fifteen and one-half feet distant from the rail next to it. A bay window projected three and one-half feet from about the middle of the front. We must assume that without fault of his own the intestate did not see or hear the approaching train until he had nearly passed the south end of the station. He was warned of his danger by the shouts of a man and boy, but we must assume he did not hear them. When the head of his horse was within six feet of the rail next to him he was seen to look toward the coming train, which, from his position, looking past the corner of the station and the projecting bay window he could then see rapidly approaching, probably about 200 feet from the crossing. He rose from his seat, stood up, seemed as if about to jump from his wagon, but instead of doing so changed his lines from one hand to the other and struck his horse several times with his whip. His horse increased its speed somewhat and crossed the track, but not far enough along to take him out of the reach of the train. It struck and killed him.

The learned trial court charged the jury, the defendant's counsel excepting to the charge as inapplicable to the case,

that " Where one person without fault upon his part, through the carelessness of another, is placed in a position of imminent danger, the law does not exact from him the same cool and deliberate judgment which it would require from him if he had time to consider, and was placed in no peril.   *   *   * If there were, for instance, open to him at that instant two possible causes of action, one to try to turn his horse around, or stop it and keep it off the track, and the other one to try and urge it across the track and get over before the train could strike him," then if the intestate used his best judgment in adopting the latter course it was for the jury to determine whether he was careless.

It is clear that the intestate was not in imminent peril, unless when he saw the near approaching train, he should refuse to stop his horse.   He could and should have stopped then and there; if he had stopped he would not have been in apparent danger, whether he had remained in his wagon or had jumped from it and taken his horse by the head.   The highway and adjoining ground for twenty-five feet upon each side of him was nearly level.   He was not confused by other tracks, trains or engines.   His horse was not restive.   If he was absorbed in his own thoughts so as to be less than reasonably alert to the danger of the situation; if he underestimated the speed of the train, or overestimated the speed of his horse — or, all combined — it was his misfortune, not the fault of the defendant.   The situation does not support the inference that it must have appeared to him that it was dangerous for him to stop where he was, but rather that he supposed that he could safely pass the crossing; thus he voluntarily — not under the coercion of other apparent danger, for which the defendant was in fault — took the risk.   He could have made no serious comparison between the danger to be apprehended from the fright of his horse and from collision with the train.

The burden was upon the plaintiffs to show that their intestate acted with reasonable care under the circumstances.   The charge of the trial court permitted such finding, but the evidence did not.   The charge was inapplicable, and the verdict without support in the evidence.

4

The judgment should be reversed and a new trial granted, costs to abide the event.

MARTIN, J. (dissenting).  As this court can review questions of law only, I cannot concur in the prevailing opinion.  The conclusion that the plaintiffs' intestate was guilty of contributory negligence, as a matter of law, is not sustained by the decisions of this court.  The question of contributory negligence is generally a question of fact to be determined by a jury, and is not within the province of the court.  It is only where it clearly appears from all the circumstances, or is proved by uncontroverted evidence, that the party injured has, by his own acts or neglect, contributed to the injury, that the court can determine that question.  (*Lane* v. *Atlantic Works*, 111 Mass. 136 ; *Weber* v. *N. Y. C. & H. R. R. R. Co.*, 58 N. Y. 451 ; *Davis* v. *N. Y. C. & H. R. R. R. Co.*, 47 N. Y. 400 ; *Hackford* v. *N. Y. C. & H. R. R. R. Co.*, 53 N. Y. 654.)  The instances in which such determinations have been sustained have been exceptional cases in which the court has adjudged that such negligence was conclusively established by evidence which left nothing, either of inference or of fact, in doubt or to be settled by a jury.  (*Massoth* v. *D. & H. C. Co.*, 64 N. Y. 529 ; *Casey* v. *N. Y. C. & H. R. R. R. Co.*, 78 N. Y. 518 ; *Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 N. Y. 464 ; *Shaw* v. *Jewett*, 86 N. Y. 616 ; *Cosgrove* v. *N. Y. C. & H. R. R. R. Co.*, 87 N. Y. 88 ; *Sherry* v. *N. Y. C. & H. R. R. R. Co.*, 104 N. Y. 652 ; *Greany* v. *Long Island R. R. Co.*, 101 N. Y. 419 ; *Palmer* v. *N. Y. C. & H. R. R. R. Co.*, 112 N. Y. 234 ; *Feeney* v. *Long Island R. R. Co.*, 116 N. Y. 375 ; *Swift* v. *S. I. R. T. R. R. Co.*, 123 N. Y. 645 ; *Oldenburg* v. *N. Y. C. & H. R. R. R. Co.*, 124 N. Y. 414 ; *Doyle* v. *P. & N. Y. C. & R. R. Co.*, 139 N. Y. 637 ; *Graham* v. *Manhattan Rway. Co.*, 149 N. Y. 336.)

Where no presumption of law exists, the process of ascertaining one fact from the proof of another is within the exclusive province of a jury.  It is not indispensable that the particular circumstances relied upon to prove a fact be con-

tradicted in order to make a disputed question of fact. If other circumstances appear in antagonism to the alleged fact, it is for the jury to determine whether the fact is proved. The jury is not only to pass upon the conflicting evidence, but when different inferences may be drawn from the evidence or the conduct of parties, they are to be drawn by the jury and not by the court. (*Justice* v. *Lang*, 52 N. Y. 323 ; *Hazman* v. *Hoboken L. & I. Co.*, 50 N. Y. 53 ; *Powell* v. *Powell*, 71 N. Y. 71; *Hart* v. *Hudson River Bridge Co.*, 80 N. Y. 622.) That different inferences might be drawn from the facts and circumstances of this case becomes quite apparent when we consider that the jury, the trial court, and all the judges who have passed upon the question save one have reached an opposite conclusion from that of the majority of this court.

That in this case the evidence was sufficient to justify the jury in finding the defendant negligent, is assumed in the prevailing opinion and cannot be denied. To reach the conclusion that the plaintiffs' intestate was guilty of contributory negligence, it is assumed that the proof was undisputed that the head of his horse was within six feet of the nearest rail when the decedent looked towards the coming train, and that looking past the projecting window at the station he could have seen it approaching at the distance of about two hundred feet. But from the evidence the jury was justified in finding that he did not see the train until his horse's head was within two feet of the nearest rail. If he could then have seen it a distance of two hundred feet, there would have been less than three seconds of time before it reached the crossing if running at fifty miles an hour, as the jury was warranted in finding. The proof also discloses that the intestate arose from his seat, seemed about to jump from his wagon, but instead changed his lines, whipped up his horse, and attempted to cross the track, when he was struck by the train and killed. From this proof this court infers that the intestate was not in imminent danger, that no alternatives were presented to him, and asserts that he could have stopped his

horse, and if he had he would not have been in danger whether he remained in the wagon or jumped to the ground. That the intestate, who must have known as much of his horse, its habits, safety and reliability as a stranger, would have attempted to cross the track, or jump from his wagon, if the horse had been safe to stand within two feet of the track facing a rapidly passing train, or could have been safely turned without coming in contact with it, is not to be conjectured or surmised under the circumstances disclosed in this case. I know of no authority which permits this court to draw those inferences from the proof, instead of relying upon the findings of the jury. The proof furnishes no incontrovertible inferences to that effect. The conclusion that the intestate was not in danger is based upon the theory that his horse was old and slow. That inference might perhaps have been drawn by the jury, but cannot, I think, be held as a matter of law. This horse, said to be old and slow, was standing two feet from the railroad track, upon which there was a train running fifty miles an hour. I cannot assent to the proposition that even such a horse could have been stopped and would have stood within that distance from the track, where the projecting car would have nearly, if not quite, reached him, and there would have been no apparent danger. The common experience of those familiar with horses, their use, their habits and their dispositions is that it is precisely that kind of a horse which, when frightened, becomes utterly unmanageable and often serious if not fatal results follow. Hence, the danger of stopping may have been equally as great as the attempt to cross. To hold otherwise as a matter of law seems to me unjustifiable. Again, how this court is able to determine that the decedent could have made no serious comparison between the danger to be apprehended from the fright of his horse and from a collision with the train, I do not understand. That he did is obvious, as his first determination evidently was to jump from the wagon. This not only shows that more than one alternative was presented to his mind, but that he appreciated and was confused by the imminent peril of the situation.

If it be suggested that the decedent might have turned his horse and thus escape all danger, we find no basis for that conclusion as a matter of law.   With a horse standing within two feet of the rails while a train was approaching which projected nearly that distance beyond them, without knowing the circle within which the wagon might be turned, it is quite difficult to say that the decedent might have turned his wagon without its coming in contact with the approaching train.

The jury was justified in finding that by its negligence the defendant lured the intestate into a place of imminent danger. Its train was running at fifty miles an hour, a speed at which it was never seen to pass that place before.   It usually had a flagman at the crossing when it passed, but when the accident occurred no flagman was there.   No whistle was sounded, no bell rung, and no notice whatever was given of its approach.   As the intestate neared the crossing his view was so obstructed that he could not discover the on-coming train until he was in a place of great peril.   His situation was one to excite fear and terror, and would naturally paralyze the mind and cloud the judgment of the most reckless or brave.

It is obvious that the decedent was placed in a situation where he was required to adopt one of at least three perilous alternatives : 1. To attempt to pass over the track before the train reached the crossing ; 2. To stop at a place where the passing cars would have nearly, if not quite, come in contact with the head of his horse ; or, 3. To attempt to turn around and thus try to avoid a collision.   To be successful, any of these attempts must be performed in less than three seconds.   That any of these alternatives would have prevented the accident cannot be held as a matter of law under the circumstances established.   This court may conjecture or speculate in regard to what would have been the result if some other course had been pursued, but there is no such incontrovertible proof of the probable result of such a course as to present a question of law.

A person who, through the negligence of another finds himself in a position of danger, cannot be held guilty of contribu-

tory negligence because he does not act in the emergency in the best way to avoid the danger. That which may appear to be best to a court examining the matter afterwards at leisure, and upon a full knowledge of the facts anterior and subsequent, is not necessarily obvious, even to a prudent and skillful man upon sudden alarm. It would be absurd to hold that a person in imminent danger is negligent because he fails to take every precaution that a careful calculation would afterwards show he might have taken. The emergency in which the decedent was placed was one for which the defendant was responsible, and, hence, if the former did not exercise the presence of mind and judgment that an ordinarily prudent man would have exercised under ordinary circumstances, his acts cannot be held to constitute contributory negligence as a matter of law. (*Buel* v. *N. Y. C. R. R. Co.*, 31 N. Y. 314; *Filer* v. *N. Y. C. R. R. Co.*, 49 N. Y. 47; *Coulter* v. *A. M. U. E. Co.*, 56 N. Y. 585; *Lewis* v. *L. I. R. R. Co.*, 162 N. Y. 52.) This is the rule, even though it should transpire that no injury would have been sustained had the decedent adopted some other course. (*Twomley* v. *C. P., N. & E. R. R. R. Co.*, 69 N. Y. 158; *Bernhard* v. *R. & S. R. R. Co.*, 1 Abb. Ct. App. Dec. 131; *Rexter* v. *Starin*, 73 N. Y. 601; *Wynn* v. *C. P., N. & E. R. R. R. Co.*, 133 N. Y. 575.)

That a person approaching a railroad crossing is not required as a matter of law to stop before attempting to cross, but that his omission to do so is a fact for the consideration of the jury, is well established by the decisions of this court. (*Davis* v. *N. Y. C. & H. R. R. R. Co.*, 47 N. Y. 400; *Dolan* v. *D. & H. C. Co.*, 71 N. Y. 285; *Kellogg* v. *N. Y. C. & H. R. R. R. Co.*, 79 N. Y. 72; *Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 N. Y. 464, 467; *Judson* v. *Central Vermont R. R. Co.*, 158 N. Y. 597.)

It seems to me plain that under the authorities it is impossible to properly hold that the question of the decedent's contributory negligence was a question of law. The questions were, *first*, what was ordinary care under the circumstances established upon the trial: *second*, if the intestate was not

placed in a position of imminent danger by the negligence of the defendant, did the conduct of the decedent come up to that standard ; and, *third,* was he placed in a position of imminent peril ? No standard has been fixed by law which is applicable to the facts and circumstances of this case by which these questions can be determined, and, therefore, they were for the jury and not for the court.

I think the judgment should be affirmed.

PARKER, Ch. J., O'BRIEN, BARTLETT and HAIGHT, JJ., concur with LANDON, J., for reversal; VANN, J., concurs with MARTIN, J., for affirmance.

Judgment reversed, etc.